869 P.2d 500

**CANON SCHOOL DISTRICT NO. 50, a political subdivision of the State of Arizona, Plaintiff–Appellant,**

v.

**W.E.S. CONSTRUCTION COMPANY, INC., an Arizona corporation, Defendant–Appellee.**

No. CV–92–0426–PR.

Supreme Court of Arizona, En Banc.

Feb. 24, 1994.

Favour, Moore, Wilhelmsen, Payette & Schuyler, P.A. by Lance B. Payette, David K. Wilhelmsen, Prescott, for plaintiff-appellant.

Dillingham, Keilp & Cross, P.C. by John L. Dillingham, Phoenix, for defendant-appellee.

Thomas W. Pickrell, Phoenix, for amicus curiae, Arizona School Boards Ass'n, Inc.

Jennings, Kepner & Haug by William F. Haug, Robert O. Dyer, David W. Scanlon, Carolyn M. Kaluzniacki, Phoenix, for amici curiae, American Ins. Ass'n; Arizona Chapter of Associated Builders & Contractors, Inc.; Arizona Contractors Ass'n, Inc.; Arizona Roofing Contractors Ass'n; Associated Gen. Contractors of America, Arizona Building Chapter; Const. Financial Management

Ass'n; Nat. Ass'n of Sur. Bond Producers; and the Sur. Ass'n of America.

## OPINION

CORCORAN, Justice.

We are asked to determine whether Canon School District No. 50 (School District) is bound by its contractual agreement to arbitrate procurement-related claims brought against it by W.E.S. Construction Company, Inc. (W.E.S.). This issue arises because the administrative rules adopted by the Arizona Board of Education pursuant to A.R.S. § 15–213 purportedly establish an exclusive dispute resolution procedure for asserting procurement-related claims against any school district within the state. *See* Arizona Administrative Code, Office of the Arizona Secretary of State (A.A.C.), R7–2–1155 to –1182. Because we presume that a number of procurement contracts entered into by school districts contain arbitration provisions, we granted review to resolve this issue of statewide importance. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

### Factual and Procedural Background

In January 1989, W.E.S. entered into a contract with the School District for the construction of a school building in Black Canyon City. The contract included a provision requiring all disputes between the parties to be resolved through arbitration.[1]

After W.E.S. began construction, the School District apparently experienced problems obtaining the requisite building permits from Yavapai County. W.E.S. claims that because of these problems, the School District instructed W.E.S. to discontinue its work on the project until the dispute was resolved, and consequently, construction was delayed for more than 2 months.

W.E.S. further alleges that in May 1989, it was prepared to resume construction upon receiving certain necessary information from the project architect. However, a dispute arose between W.E.S. and the project architect after each claimed that the other was not expeditiously performing its duties under the contract. Thus, in early July 1989, W.E.S. served the School District with a demand for arbitration, contending that the School District had breached the contract. W.E.S. claimed that as a result of these breaches, it incurred delay-related damages as well as lost profits and consequential damages.

After receiving the demand for arbitration, the School District filed a complaint in Yavapai County Superior Court requesting that the court enter a show cause order as to why the arbitration should not be stayed. The School District maintained that § 15–213 and the procurement rules adopted by the Board of Education thereunder, A.A.C. R7–2–1101 to –1195, rendered its contractual agreement to arbitrate invalid and unenforceable. After conducting a hearing in the matter, the trial court denied the School District's request to stay the arbitration. Moreover, the court declared the contract's arbitration provision valid and enforceable, and it awarded attorney's fees and costs to W.E.S.

The School District appealed from the trial court's judgment, and the court of appeals affirmed the judgment in part and reversed in part. *Canon School Dist. v. W.E.S. Constr. Co.*, 174 Ariz. 269, 848 P.2d 848 (App. 1992). The court of appeals held that although § 15–213(D) preserves W.E.S.'s contractual right to arbitrate its delay-related claims against the School District, all other procurement-related claims must be resolved according to the procedure set forth in the Board of Education's procurement rules. Additionally, the court found that the dispute resolution procedure created by the Board of Education does not deprive W.E.S. of its due

---

1. This provision was taken from a standard form contract drafted by the American Institute of Architects (AIA), which reads in relevant part:
   **7.9  ARBITRATION**
   7.9.1  All claims, disputes and other matters in question between the Contractor [W.E.S.] and the Owner [School District] arising out of, or relating to, the Contract Documents or the

breach thereof . . ., shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.
"General Conditions of the Contract for Construction," AIA Document A201 (1976).

process rights, and that the trial court was correct in refusing to find that the School District was estopped from challenging the enforceability of the arbitration provision.

In this court, W.E.S. filed a petition and the School District filed a cross-petition seeking review of the court of appeals' decision. We granted review, and for the reasons discussed below, we hold that A.R.S. § 15–213(D) preserves W.E.S.'s contractual right to arbitrate all of its procurement-related claims against the School District.[2]

### Discussion

■ Section 15–213 is the enabling statute that vests the Board of Education with authority to adopt rules establishing procurement practices for all school districts within the state. *See* A.R.S. § 15–213(A). The procurement rules adopted by the Board of Education are codified at A.A.C. R7–2–1001 to –1195, and they set forth, *inter alia*, a comprehensive dispute resolution procedure. Specifically, these rules designate how procurement-related claims brought against a school district shall be asserted, decided, and appealed. *See, e.g.,* A.A.C. R7–2–1155 to –1182. Particularly relevant to this case is A.A.C. R7–2–1184, which states:

> This Article [Article 10, School District Procurement Code; A.A.C. R7–2–1001 to –1195] provides the *exclusive procedure* for asserting a cause against the school district and its governing board arising in relation to any procurement conducted under this Article.

(Emphasis added.)

The School District argues that, notwithstanding its contractual agreement to arbitrate, all of W.E.S.'s procurement-related claims must be resolved according to the Board of Education's exclusive remedy procedure. To the contrary, W.E.S. maintains that § 15–213(D) preserves its contractual right to arbitrate its claims. Subsection (D) of § 15–213 provides:

> A contract for the procurement of construction shall include a provision which provides for negotiations between the school district and the contractor for the recovery of damages related to expenses incurred by the contractor for a delay for which the school district is responsible, which is unreasonable under the circumstances and which was not within the contemplation of the parties to the contract. *This section shall not be construed to void any provision in the contract which requires notice of delays, provides for arbitration or other procedure for settlement or provides for liquidated damages.*

(Emphasis added.)

■ In light of the apparent conflict between the language of § 15–213(D) and the Board of Education's procurement rules, we must determine whether the School District's contractual agreement to arbitrate is valid and enforceable. If the exclusive remedy procedure set forth in the procurement rules conflicts with the statute, then to the extent of the conflict, the rules must yield to the statute. *See Fullen v. Industrial Comm'n,* 122 Ariz. 425, 428, 595 P.2d 657, 660 (1979). Thus, the precise issue in this case is whether the words "this section" in § 15–213(D) refer only to subsection (D) itself, or instead refer to § 15–213 in its entirety. If "this section" refers only to subsection (D), which addresses only delay-related damages, then the statute protects W.E.S.'s contractual right to arbitrate *only* its delay-related claims against the School District. On the other hand, if "this section" refers to § 15–213 in its entirety, the statute protects W.E.S.'s contractual right to arbitrate *all* of its procurement-related claims against the

---

**2.** We also granted review on three additional issues not *discussed in the text of this opinion,* two from W.E.S.'s petition for review and one from the School District's cross-petition.

The two issues from W.E.S.'s petition were the due process and estoppel issues presented to and decided by the court of appeals. Because we find the statutory construction issue dispositive in this case, we need not reach the other two issues at this time.

The issue from the School District's cross-petition was whether a *school district is authorized* to enter into a procurement contract that contains an agreement to arbitrate disputes. This issue is a corollary of the statutory construction issue we resolve above, and as such, we answer it *in the affirmative.*

School District. Because this case turns on an issue of statutory construction, and therefore presents a question of law, our review is *de novo*. *See Marsoner v. Pima County,* 166 Ariz. 486, 488, 803 P.2d 897, 899 (1991).

In construing § 15–213(D), the court of appeals held that "this section" refers only to subsection (D) itself. Although acknowledging that it ordinarily would construe "this section" as referring to the entire statutory section—namely § 15–213—the court concluded that the Legislature intended "this section" to modify only the first sentence of subsection (D).

As evidence of the Legislature's intent, the court of appeals primarily relied upon similarities between § 15–213(D) and § 41–2617,[3] a similar statute in the general state procurement code. Specifically, the court noted that §§ 15–213(D) and 41–2617 both were enacted at the same time, both concern procurement by governmental bodies, and both contain virtually identical language. From this, the court speculated that the Legislature borrowed the language of § 15–213(D) from § 41–2617 and inadvertently neglected to change the words "this section" to "this subsection"; hence, the words "this section" in § 15–213(D) resulted from a draftsman's error. Therefore, to properly effectuate legislative intent, the court of appeals concluded that both statutes should be construed consistently. Because § 41–2617 preserves arbitration only for delay-related claims, the court held that § 15–213(D) likewise preserves arbitration only for delay-related claims. We disagree.

We have long recognized that one of the fundamental goals of statutory construction is to effectuate legislative intent. *See, e.g., Automatic Registering Mach. Co. v. Pima County,* 36 Ariz. 367, 370, 285 P. 1034, 1035 (1930). Yet, "[e]qually fundamental is the presumption that what the Legislature means, it will say." *Padilla v. Industrial*

*Comm'n,* 113 Ariz. 104, 106, 546 P.2d 1135, 1137 (1976); *see also Board of Education v. Leslie,* 112 Ariz. 463, 465, 543 P.2d 775, 777 (1975); *Gustafson v. Rajkovich,* 76 Ariz. 280, 285, 263 P.2d 540, 543–44 (1953). For this reason, we have often stated that the "best and most reliable index of a statute's meaning is its language," *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991), and where the language is plain and unambiguous, courts generally must follow the text as written. *Mid Kansas Fed. Sav. & Loan Ass'n v. Dynamic Dev. Corp.,* 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991); *see also Balestrieri v. Hartford Acc. & Indem. Ins. Co.,* 112 Ariz. 160, 163, 540 P.2d 126, 129 (1975). Accordingly, absent a clear indication of legislative intent to the contrary, we are reluctant to construe the words of a statute to mean something other than what they plainly state. As this court has previously declared,

> It is only where there is no doubt as to the intention of those who frame [a] … statute that a court may modify, alter or supply words that will "obviate any repugnancy to or inconsistency with such intention," and by so doing permit "particular provisions" to be read or construed otherwise than "according to their literal meaning."

*Board of Supervisors v. Pratt,* 47 Ariz. 536, 542–43, 57 P.2d 1220, 1223 (1936) (citations omitted).

Unlike the court of appeals, we do not find the legislative intent in this case sufficiently unambiguous to warrant the conclusion that the words "this section" in § 15–213(D) resulted from a draftsman's error. In subsections (C) and (F) of § 15–213, the Legislature expressly used the term "subsection" to limit the reach of those provisions to a particular subsection. Conversely, it used the words "this section" in subsections (E) and (F) to refer to § 15–213 in its entirety. Thus, we are unwilling to assume that the Legislature

**3.** Section 41–2617 provides:

A contract for the procurement of construction shall include a provision which provides for negotiations between the state governmental unit and the contractor for the recovery of damages related to expenses incurred by the contractor for a delay for which the state governmental unit is responsible, which is unreasonable under the circumstances and which was not within the contemplation of the parties to the contract. This section shall not be construed to void any provision in the contract which requires notice of delays, provides for arbitration or other procedure for settlement or provides for liquidated damages.

did not mean what it said when it used the words "this section" in subsection (D).

Moreover, we do not agree that similarities between §§ 15–213(D) and 41–2617 require us to construe the words "this section" in § 15–213(D) to mean exactly what those same words mean in § 41–2617. Although § 15–213(A)(1) requires the procurement rules adopted by the Board of Education to be consistent with the state procurement rules prescribed in title 41, they need not be coextensive to be consistent. Put another way, title 15 does not require wholesale adoption of the state procurement rules, and a court need not construe its provisions as if it does.

■ We agree with the court of appeals that similar statutes should be construed consistently whenever possible. However, we do not believe that interpreting the words "this section" in § 15–213(D) as referring to all of § 15–213 would render the statutory schemes inconsistent in any way. Nor do we believe that this interpretation will lead to the absurdity that the court of appeals anticipates. As we have stated before, "[w]e are not aware of any absurdity or inconsistency that will arise by construing [a statute] to mean what it says." *Adams v. Bolin*, 74 Ariz. 269, 274, 247 P.2d 617, 620 (1952).

■ Additionally, the effect and consequences of alternative statutory constructions, although not determinative, may be taken into consideration. *DOR v. Southern Union Gas Co.*, 119 Ariz. 512, 514, 582 P.2d 158, 160 (1978). We recognize that if we were to depart from a literal interpretation of the statute's language, as did the court of appeals, then the potential effect would be to split procurement-related litigation involving a school district between two or more fora. Of course, we find this potential effect undesirable.

■ For the reasons discussed above, we construe the words "this section" in § 15–

213(D) to mean precisely what they say. That is, "[§ 15–213] shall not be construed to void any provision in the contract which ... provides for arbitration...." Correspondingly, the exclusive remedy procedure adopted by the Board of Education pursuant to § 15–213 cannot void a contractual agreement to arbitrate. An administrative agency, such as the Board of Education, must exercise its rule-making authority within the parameters of its statutory grant; to do otherwise is to usurp its legislative authority. *See Fullen*, 122 Ariz. at 428, 595 P.2d at 660; *see also Cochise County v. AHCCS*, 170 Ariz. 443, 445, 825 P.2d 968, 970 (App.1991); *Kennecott Copper Corp. v. Industrial Comm'n*, 115 Ariz. 184, 186, 564 P.2d 407, 409 (App. 1977). By adopting an exclusive remedy procedure that contravenes the express limitations enunciated in § 15–213(D), the Board of Education acted beyond its authority—at least to the extent that its rules preclude contractual agreements to arbitrate. Consequently, we hold that W.E.S. retains its contractual right to arbitrate *all* of its procurement-related claims against the School District.[4]

### Disposition

We affirm the trial court's judgment that the School District's contractual agreement to arbitrate is valid and enforceable, and we therefore vacate the court of appeals' opinion. In addition, we affirm the trial court's judgment awarding attorney's fees and costs to W.E.S. Although the court of appeals declined to award attorney's fees to either party on appeal upon determining that neither party was the "successful party," pursuant to A.R.S. § 12–341.01, we award to W.E.S. reasonable attorney's fees and costs incurred both in defending the appeal in the court of appeals and in pursuing its petition for review with this court. W.E.S. may establish the amount of its award by complying

---

4. We note that while this case was pending in the court of appeals, the parties proceeded to arbitration. The arbitrators entered an award in favor of W.E.S. on both its claim and the School District's counterclaim. After the trial court confirmed the arbitration award, the School District appealed. On appeal, the court of appeals affirmed. *Canon School Dist. v. W.E.S. Constr. Co.*, 177 Ariz. 431, 868 P.2d 1014 (App.1993). On November 17, 1993, the School District filed a petition with this court seeking review of the court of appeals' decision. *Canon School Dist. v. W.E.S. Constr. Co.*, CV–93–0399–PR. We granted review.

with rule 21, Arizona Rules of Civil Appellate Procedure.

FELDMAN, C.J., MOELLER, V.C.J., and ZLAKET and MARTONE, JJ., concur.