111 P.3d 435

PRIMARY CONSULTANTS, L.L.C., an Arizona Limited Liability Company, by its managing member Paul Ulan, Plaintiff–Appellant,

v.

MARICOPA COUNTY RECORDER, Helen Purcell, in her official capacity as the Maricopa County Recorder; Maricopa County Director of Elections, Karen Osborne, in her official capacity as the Maricopa County Director of Elections, Defendants–Appellees.

No. 1 CA–CV 04–0268.

Court of Appeals of Arizona, Division 1, Department B.

May 12, 2005.

**394**

Dohrer & Watts, P.L.C. By Suzanne M. Dohrer, Stanley R. Watts, Phoenix, Attorneys for Plaintiff–Appellant.

Andrew P. Thomas, Maricopa County Attorney By Rebecca C. Salisbury, Deputy County Attorney, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

HALL, Judge.

¶ 1 Plaintiff-appellant Primary Consultants, L.L.C., a political consulting firm, and its managing member Paul Ulan (collectively, Primary Consultants) appeal from the trial court's decision denying special action relief and concluding that defendants-appellees Maricopa County Recorder Helen Purcell and Maricopa County Director of Elections Karen Osborne (collectively, the County), acting in their official capacities, did not improperly deny it access to certain voter information. For the following reasons, we reverse the trial court's ruling and remand.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Primary Consultants is a political consulting business that uses voter and election records for election-and political-related purposes in providing professional services to political candidates, political campaign committees, and individuals considering political candidacy. Primary Consultants is reimbursed for costs and receives a fee for its professional services. Paul Ulan occasionally requests and uses voter records not on behalf of a particular client but to update research on election and voter data, trends, and records as part of his business.

¶ 3 Between July 2000 and November 2002, Primary Consultants submitted a number of requests for public records to the Maricopa County Recorder's Office, Director of Elections. Three of the requests sought information regarding signature rosters for various specified school override elections, another sought information on voters who returned mail-in ballots in a particular election as well as on voters who requested early ballots in a different election, and a fifth sought information on voters requesting early ballots or voting on election day in certain specified school elections. Primary Consultants also requested copies of all requests by companies, campaign committees, or individuals for signature rosters, voter data, election results and early voter data from July 1, 2000 to October 1, 2001.

¶ 4 The County refused to supply the requested information to Primary Consultants

on the grounds that, as a for-profit election consulting business, Primary Consultants sought to use the information for a commercial purpose, which was prohibited by statute. The County did, on occasion, provide similar information to clients of Primary Consultants or to Primary Consultants directly, when Primary Consultants produced written authorization from a committee or candidate.

¶ 5 Primary Consultants filed this action in June 2003, pursuant to Arizona Revised Statutes (A.R.S.) section 39–121.02 (2001), which provides that a person may appeal the denial of access to public records by special action in superior court. Primary Consultants argued that, under the public records law, A.R.S. §§ 39–101 to. 39–161 (2001), public records were presumed to be available to the public unless their disclosure was statutorily restricted or limited based on privacy or policy considerations. Primary Consultants acknowledged that A.R.S. § 16–168(E) (Supp.2004), which governs disclosure of voter information, restricted disclosure to use only for purposes related to political activity, a political campaign or election, revising election district boundaries, or other specifically authorized purposes. It also acknowledged that § 16–168(E) expressly precluded use of voter information for a commercial purpose, but maintained that its use of the requested information was a permissible use relating to political activity, a campaign, or an election, and that it was not for a "commercial purpose" as defined by A.R.S. § 39–121.03(D) (2001). Primary Consultants argued that the County misinterpreted and misapplied the definition of "commercial purpose" in denying it access to the requested voter information. Additionally, it claimed that its request for copies of other requests for voter information was not itself a request for voter information governed by § 16–168 and so any denial of the request should have complied with the procedural requirements outlined in § 39–121.03(B).

¶ 6 The County argued that the records sought were not public records under § 39–121 and therefore the court's special action jurisdiction was not statutory under § 39–121.02(A), but pursuant to Rule 4 of the Arizona Rules of Procedure for Special Actions.[1] The County contended that because voter information was not public record, it was governed only by § 16–168 and was not subject to any of the procedural requirements of the public records law. The County asserted that the County Recorder properly determined that Primary Consultants was seeking the information for an improper commercial purpose. With respect to Primary Consultants' request for copies of requests by others, the County argued that it was not a request for existing identifiable records and that the records custodian was not required to create records or maintain the requests as a public record.

¶ 7 After oral argument, the trial court issued its ruling. The court found that, before the County could disclose voter records, it had to determine whether the use was one permitted by statute. The court ruled that that determination was within the discretion of the County and was subject to review only for an abuse of discretion. The court further found that Primary Consultants' use of the voter information in the course of its business, both for clients and for its own professional knowledge gave the County a basis for refusing to provide the records such that its decision to deny access was not arbitrary or capricious. The court found that use of the records by Primary Consultants personally and not in the course of working for a particular campaign was not a permitted use. Further, the court did not distinguish between the request for voter information and the request for records regarding other requests for voter information. The court dismissed the special action.

¶ 8 Primary Consultants filed a premature notice of appeal on April 9, 2004, from the

---

1. A special action brought pursuant to the Arizona Rules of Procedure for Special Actions is limited to questions of "(a) Whether the defendant failed to exercise discretion which he has a duty to exercise; or to perform a duty required by law as to which he has no discretion; or (b) Whether the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority; or (c) Whether a determination was arbitrary and capricious or an abuse of discretion." Ariz. R.P. Spec. Act. 3. Where a special action is authorized by statute, the issues that may be raised are not limited by the rules. Ariz. R.P. Spec. Act. 1(b).

trial court's unsigned minute entry. Judgment was subsequently entered on April 22, 2004. Because a final judgment has since been entered, Primary Consultants' premature notice of appeal was timely. *Barassi v. Matison*, 130 Ariz. 418, 421–22, 636 P.2d 1200, 1203–04 (1981). We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

■■■■ ¶ 9 Generally, public records are available for inspection by any person.[2] A.R.S. § 39–121 (2001). Public policy favors disclosure. *Carlson v. Pima County*, 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984). Access may be limited, however, when a statute restricts access or when the custodian of the records appropriately determines that countervailing interests such as confidentiality, privacy, or the best interests of the state warrant denial of the records request. *Id.* A person who has been denied access may appeal that denial through a special action in superior court. § 39–121.02(A). Public records may also be used for commercial purposes upon completion of a statement identifying such a use. § 39–121.03(A). When the records custodian denies a request for records to be used for a commercial purpose on the grounds that the purpose intended constitutes a misuse of public records or an abuse of the right to receive public records, the custodian may apply to the governor for an executive order prohibiting the disclosure of that information for that commercial purpose. § 39–121.03(B).

¶ 10 Section 16–168 restricts the use of voter information to certain specific uses authorized by the statute. The statute authorizes the use of precinct registers at polling places as well as the disclosure of voter registration information to party chairmen and others in connection with primary and general elections. § 16–168(C). The statute specifically provides that "[p]recinct registers and other lists and information derived from registration forms may be used only for purposes relating to a political or political party activity, a political campaign or an election, for revising election district boundaries or for any other purpose specifically authorized by law[.]" § 16–168(E). The statute further states that the information derived from registration forms "may not be used for a commercial purpose as defined in § 39–121.03. The sale of registers, lists and information derived from registration forms to a candidate or a registered political committee for a use specifically authorized by this subsection does not constitute use for a commercial purpose."[3] *Id.* "Commercial purpose" is defined as:

> [T]he use of a public record for the purpose of sale or resale or for the purpose of producing a document containing all or part of the copy, printout or photograph for sale or the obtaining of names and addresses from public records for the purpose of solicitation or for any purpose in which the purchaser can reasonably anticipate the receipt of monetary gain from the direct or indirect use of the public record.

§ 39–121.03(D). Even when access is available to voter registration information for authorized uses, the records must be redacted to preclude the disclosure of certain personal

---

**2.** Public records includes "all records, including records as defined in § 41–1350, reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities which are supported by funds from the state or any political subdivision of the state." A.R.S. § 39–121.01(B) (2001). Arizona Revised Statutes § 41–1350 (2004) defines records as "all books, papers, maps, photographs or other documentary materials, regardless of physical form or characteristics, ... made or received by any governmental agency in pursuance of law or in connection with the transaction of public business and preserved or appropriate for preservation by the agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations or other

activities of the government, or because of the informational and historical value of data contained therein."

**3.** This language was added by amendment effective August 9, 2001. 2001 Ariz. Sess. Laws, ch. 301, § 2; § 16–168 Historical and Statutory Notes. Primary Consultants' various records requests were submitted both before and after this date. The County did not respond to the requests, however, until December 2001, after the effective date of the statute, when by letter to Primary Consultants' counsel, the County Attorney advised that the requests were viewed as being for a commercial purpose, which was prohibited by § 16–168.

identifying information, such as social security numbers and voter signatures. § 16–168(F).

## I.

¶ 11 As a preliminary matter, the parties disagree on whether § 16–168 creates an independent scheme for access to voter registration information so that § 39–121.02 does not apply, or whether such records remain public records under the purview of the public records statutes, A.R.S. §§ 39–101 to 39–161. The County argues that voter records are not public records, that § 39–121.02(A) does not apply, and that therefore the special action in this case was brought pursuant to the rules for special actions. Consequently, the County contends, review by the trial court was limited, as is review by this court, to whether the actions of the County were an abuse of discretion, arbitrary, or capricious. Ariz. R.P. Spec. Act. 3. Primary Consultants maintains that, although access to voter records is more restricted than to other public records, they nonetheless remain public records subject to the provisions of the public records laws. Therefore, Primary Consultants argues, it properly brought a statutory special action pursuant to § 39–121.02(A), and that the superior court should have exercised de novo review. *See Cox Arizona Publications, Inc. v. Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993) ("Whether the denial of access to public records is wrongful is an issue of law which we review de novo."); *see also* Ariz. R.P. Spec. Act. 1(b).

¶ 12 The term "public records" is defined broadly and, although the County contends that voter records are not public records under §§ 39–121, –121.01, –121.02, and–121.03, it does not argue that voter records do not fit within the broad definition. In fact, voter registration forms are by statute expressly declared to be public records, and the county recorder is obligated to retain them as such. A.R.S. §§ 16–161, –162 (1996). Other provisions in Title 16 also support the view that voter records are public records. *See* A.R.S. § 16–153 (authorizing certain public officials to request that the public not be permitted to access certain specified personal information from voter

registration records), § 16–168(F) (stating that nothing in the section precludes public inspection of voter registration records for the authorized purposes). The County argues that these provisions demonstrate an intent to treat voter records differently from public records. We disagree. Instead, they demonstrate an intent to establish parameters within which the records may be accessed while maintaining their status as public records.

¶ 13 The County also argues that the enactment of § 16–168 restricting access to voter records demonstrates that the general public records laws do not control. Citing *Berry v. State Department of Corrections*, 145 Ariz. 12, 699 P.2d 387 (App.1985), the County asserts that § 16–168 is a more specific statute, and therefore controls over § 39–121, the general statute.

¶ 14 *Berry* does not help the County. In *Berry*, an inmate sought access to his master record files pursuant to § 39–121. *Id.* at 13, 699 P.2d at 388. Another statute expressly precluded inmates from having access to those files. *Id.* The court found that the more specific statute governed over § 39–121, and that the inmate was properly denied access to his file. *Id.* In this case, Primary Consultants is not contending that it is entitled to access to voter information under § 39–121 despite the specific restrictions of § 16–168; Primary Consultants acknowledges that access to the voter information is governed by § 16–168. Rather, Primary Consultants contends that, despite the restrictions of § 16–168, the voter records remain public records such that the denial of access under § 16–168 still constitutes the denial of access to public records so that the decision may be challenged under the public records statute.

¶ 15 Our goal in construing a statute is to give effect to legislative intent. *Mail Boxes, etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). We construe related statutes in light of the entire statutory scheme. *Dugan v. Fujitsu Bus. Communications Sys., Inc.*, 188 Ariz. 516, 518–19, 937 P.2d 706, 708–09 (App.1997).

¶ 16 The legislature has established a policy of presumptive access to public records,

which are defined broadly. §§ 39–121, –121.01(B), 41–1350. It has also established a mechanism by which those denied access to public records may challenge that decision. § 39–121.02(A). Additionally, the legislature has determined that voter registration information should have more protection from public access than other types of information. It has not, however, declared that voter records are not public records, which it could easily have done. *See, e.g.,* A.R.S. § 36–509 (Supp.2004) (stating that treatment records for patients civilly committed must be kept "confidential and not as public records"); A.R.S. § 16–153(G), (J) (Supp.2004) (upon request of certain persons and issuance of court order, "information in the [voter] registration shall not be disclosed and is not a public record"). Rather, it established restrictions within which voter records, like other public records, may be accessed by certain persons and entities for certain purposes. Because voter records remain public records, albeit subject to greater restrictions, we find that the denial of access to such records is subject to review pursuant to § 39–121.02(A). Thus, whether the County wrongfully denied Primary Consultants access to requested records is subject to our de novo review.

## II.

■ ¶ 17 We first address Primary Consultants' argument that the County improperly denied its October 2001 request for a "copy of all requests made by companies, campaign committees, or individuals for signature rosters, voter data, election results and early voter data from 7/1/00 through 10/01/01." It submitted the request on a form titled "NON–COMMERCIAL PURPOSE Voter Data Public Record Request." Primary Consultants argues that these records are not voter records subject to the restrictions of § 16–168, but are standard public records, the disclosure of which is

governed by §§ 39–121.01, –121.02, and–121.03.

¶ 18 In the trial court, the County asserted that this request sought "information" rather than existing identifiable records and maintained that a custodian was not obligated to conduct research to respond to a public records request. By affidavit, Osborne avowed that the records custodian was not required to maintain or preserve the records requested. On appeal, the County additionally argues that the request was treated as a request under § 16–168 because it was submitted on a form for a non-commercial request for voter data, that the request was interpreted as including not only copies of the requests but also the voter data supplied in response to the requests, and that the elections department receives innumerable formal and informal requests for voter data in a variety of manners for which no record must be kept. The County does not direct us to any support for these new arguments in the record.

¶ 19 Moreover, the County does not argue that Primary Consultants' request for copies of the requests of others is a request for voter data subject to § 16–168.[4] The parties dispute, however, whether the records requests sought by Primary Consultants are public records maintained or required to be maintained by the County. Primary Consultants argues that the record requests are public records under § 41–1350. The County asserts that it maintains records in accordance with statutes and state-approved records retention schedules, and that the records department is not required to maintain requests for information. The trial court did not address this concern.

¶ 20 The records requests would appear to be documents "received by [a] governmental agency . . . in connection with the transaction of public business" under § 41–1350. Whether such documents are records, however, also depends on whether they are "preserved or appropriate for preservation by the

4. The County does assert that the application of § 16–168 to this request was appropriate because Primary Consultants was making a backdoor effort to obtain the information it could not otherwise obtain. The County notes that Primary Consultants' counsel acknowledged that

the request was an effort to determine if Primary Consultants was being treated differently than others who requested information. We fail to see how this constitutes an effort to obtain actual voter data such that the request would be appropriately addressed under § 16–168.

agency." § 41–1350. Records determined to be of legal, administrative, historical or other value, as determined by the state library, are preserved; others are not. A.R.S. § 41–1351 (2004).

¶ 21 We cannot discern from this record whether requests for voter data are required to be preserved. Obviously, if the records have not been preserved, they cannot be produced. We can conclude, however, that Primary Consultants' request for copies of the requests of others is not governed by § 16–168, but by the general public records provisions of §§ 39–121.01, –121.02, and–121.03. By its very language, the request does not seek voter data, but only copies of the requests of others seeking that data. Therefore, to the extent the requested documents have been preserved, the County must produce them in accordance with §§ 39–121.01, –121.02, and–121.03.

### III.

¶ 22 Primary Consultants also argues that the County improperly denied its several requests for voter information pursuant to § 16–168. It contends that the County misinterpreted the definition of "commercial purpose" under § 39–121.03(D) and that the County disregarded that Primary Consultants' intended use for the information sought was for politically related activity, which is expressly authorized by § 16–168(E).

¶ 23 In the trial court, the County argued that Primary Consultants, as a for-profit consulting firm, "anticipates the receipt of monetary gain from the direct or indirect use of the public record," taking this phrase directly from the definition of "commercial purpose." § 39–121.03. Therefore, according to the County, Primary Consultants "exactly meets the statutory definition of commercial purpose." The trial court apparently agreed, emphasizing this language in its quotation of the statute, and concluding that Primary Consultants' status as a business brought it within that provision.

¶ 24 In construing a statute, we look first to the language of the statute. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). If the statutory language is unambiguous, we must give effect to the language and do not use other rules of statutory construction in its interpretation. *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). If the language is not clear, we consider other factors, such as the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose. *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). Statutory interpretation is an issue of law we review de novo. *State Comp. Fund v. Superior Court*, 190 Ariz. 371, 374–75, 948 P.2d 499, 502–03 (App.1997).

¶ 25 Primary Consultants argues that the statutory language on which the County and the trial court relied, which the County characterizes as a "catch all" phrase, has been taken out of context. Primary Consultants asserts that, when construed correctly as part of the whole statute, the language does not support the broad application given it by the County or the court. The County counters that Primary Consultants' interpretation of the statute is strained.

¶ 26 Although the statutory definition of "commercial purpose" is somewhat lengthy and difficult to parse, its meaning becomes clear upon further review. "Commercial purpose" is statutorily defined as:

the use of a public record for the purpose of sale or resale or for the purpose of producing a document containing all or part of the copy, printout or photograph for sale or the obtaining of names and addresses from public records for the purpose of solicitation or the sale of names and addresses to another for the purpose of solicitation or for any purpose in which the purchaser can reasonably anticipate the receipt of monetary gain from the direct or indirect use of the public record.

§ 39–121.03(D). This language can be broken down into three sections having parallel construction: *the use of* a public record for certain purposes, *the obtaining of* names and addresses from public records for a particular purpose, and *the sale of* names and addresses to another for certain purposes. The "purposes" listed within these sections fur-

ther describe when *the use of, the obtaining of,* and *the sale of* the public records information is deemed commercial use.

¶ 27 The County argues that the phrase "for any purpose in which the purchaser can reasonably anticipate the receipt of monetary gain from the direct or indirect use of the public record" is a catch-all phrase constituting an independent fourth section describing commercial use. The County's interpretation is not supported by the sentence structure of the statute, however. The construction of the so-called "catch-all" phrase—*for any purpose*—is simply not parallel to the construction of the other three sections: *the use of, the obtaining of,* and *the sale of.* The phrase is more properly viewed as a second purpose for which "the sale of names and addresses to another" is deemed a commercial use. This interpretation is supported not only by the overall structure of the sentence, but by the use of the term "purchaser" to refer to the person to whom the names and addresses are sold. The County argues that § 39–121.03 deals in significant part with establishing an appropriate charge for records· requested for a commercial purchase, and so "purchaser" should be interpreted as referring to the party seeking records from the records custodian. We are unpersuaded. Although the statute does refer to charging a fee to persons seeking records, it does not elsewhere in the statute refer to these persons as purchasers or as purchasing the copies of records, nor does the statute refer to the records custodian as selling the copies of the records.

¶ 28 Accordingly, we conclude that the phrase "for any purpose in which the purchaser can reasonably anticipate the receipt of monetary gain from the direct or indirect use of the public record" is not an independent catch-all phrase but modifies "the sale of names and addresses to another." Consequently, Primary Consultants' status as a for-profit business and its use of the voter information in furtherance of that business, although certainly a commercial use as that term may generally be understood, does not fall within the statutory definition of a commercial purpose. This is consistent with our prior determination that the definition of commercial purpose is "aimed at the direct

economic exploitation of public records not at the use of information gathered from public records in one's trade or business." *Star Pub. Co. v. Parks,* 178 Ariz. 604, 605, 875 P.2d 837, 838 (App.1993).

¶ 29 The County nonetheless argues that Primary Consultants sells the information it obtains to its clients and therefore falls under the definition of commercial purpose in several ways. The parties stipulated, however, that Primary Consultants' business consists of providing professional political consulting services for campaign-related activities to individuals considering political candidacy, candidates, or political campaign committees. Use of voter information for politically related purposes is expressly authorized and the sale of such information to candidates and political parties for authorized purposes is expressly excluded from the definition of a commercial purpose. § 16–168(E). Primary Consultants' sale of the information to its clients would therefore not be a commercial purpose under the statute.

## IV.

¶ 30 Primary Consultants requests an award of its attorneys' fees on appeal pursuant to § 39–121.02(B), which provides that a person wrongfully denied access to a public record may be awarded attorneys' fees if the court finds that the custodian of such public record acted in bad faith or in an arbitrary or capricious manner. However, Primary Consultants does not cite any actions by the County that would support a finding of bad faith. Accordingly, we find that the County's denial of the public records request based on its interpretation of § 39–121.03(D), albeit erroneous, was not made in bad faith or in an arbitrary or capricious manner. *See Bolm v. Custodian of Records of Tucson Police Dep't,* 193 Ariz. 35, 41, ¶ 15, 969 P.2d 200, 206 (App.1998) ("In view of ... the absence of controlling Arizona authority previously addressing the interplay between the Public Records Law and Arizona common law relating to discovery of police records in litigation, the City did not act 'in an arbitrary or capricious manner.' "). Therefore, we deny Pri-

mary Consultants' request for attorneys' fees pursuant to § 39–121.02(B).

¶31 Primary Consultants also requests that it be awarded attorneys' fees pursuant to A.R.S. §§ 12–348 and–2030(A) (2003). The purpose of § 12–348, which was modeled on the Equal Access to Justice Act (28 U.S.C. § 2412 (1994)), is to "encourage individuals ... aggrieved by governmental action to assert their rights." *New Pueblo Constructors, Inc. v. State*, 144 Ariz. 95, 112, 696 P.2d 185, 202 (1985). Primary Consultants is apparently relying on § 12–348(A)(4), which requires a court to award attorneys' fees and other expenses to a party that prevails on the merits in "[a] special action proceeding brought by the party to challenge an action by the state against a party." If so, its reliance is misplaced. First, the County's refusal to supply the requested information was not an "action" within the contemplation of § 12–348. *See Southwest Airlines v. Dept. of Revenue*, 197 Ariz. 475, 477, ¶¶ 6–7, 4 P.3d 1018, 1020 (App.2000) (common meaning of "action" as used in § 12–348 refers to "entire judicial process of dispute resolution, from invocation of the court's jurisdiction to entry of a final judgment that is not subject to further appeal"); *cf. Semple v. Tri–City Drywall, Inc.*, 172 Ariz. 608, 611, 838 P.2d 1369, 1372 (App.1992) (construing term "action" in A.R.S. § 12–341.01(A) as "a proceeding before a court of law"). Second, § 12–348(A)(4) only applies to "actions by the *state*." (Emphasis added.) "State" is defined in § 12–348(I)(3) as meaning "this state and any agency, officer, department, board or commission of this state." Consistent with the exclusion of political subdivisions from the statutory definition, the class of defendants against which attorneys' fees can be awarded in other subparagraphs of § 12–348 specifically lists "a city, town or county" in addition to the "state," *see* §§ 12–348(A)(1) and (6), in those circumstances where the legislature intended to impose liability on political subdivisions. *See Flood Control Dist. of Maricopa County v. Conlin*, 148 Ariz. 66, 70, 712 P.2d 979, 984 (App.1985) (county flood control district is not an entity within the meaning of "state" as used in § 12–348). Therefore, a "county" is not one of the entities against which an award of attorneys' fees can be made pursuant to § 12–348(A)(4).

¶32 Primary Consultants' reliance on § 12–2030, which pertains to actions in mandamus seeking to compel an officer of the state or a political subdivision to perform some mandatory duty, is similarly misplaced. Even assuming that § 39–121 imposed a mandatory duty on the County to disclose the voter information sought by Primary Consultants, the award of fees for the denial of access to public records is expressly governed by § 39–121.02(B), evincing a legislative determination to restrict such awards only to cases in which the custodian of records acted in bad faith. *Scottsdale Unified Sch. Dist. No. 48 of Maricopa County v. KPNX Broad. Co.*, 188 Ariz. 499, 506, 937 P.2d 689, 696 (App.1997) (denying an award of attorneys' fees pursuant to § 12–2030 because there was no evidence the school districts withheld information in bad faith as required under § 39–121.02(B), and § 39–121.02(B) is more specific than § 12–2030 and therefore controls), *vacated on other grounds by Scottsdale Unified Sch. Dist. No. 48 of Maricopa County v. KPNX Broad. Co.*, 191 Ariz. 297, 955 P.2d 534 (1998); *see also Ruth Fisher Elementary Sch. Dist. v. Buckeye Union High Sch. Dist.*, 202 Ariz. 107, 112, ¶21, 41 P.3d 645, 650 (App.2002) (holding that specific statutes create exceptions to general statutes; therefore, if a provision of a specific statute is inconsistent with one in a general statute on the same subject, the specific statute controls). Hence, we hold that Primary Consultants does not qualify for an award of attorneys' fees pursuant to § 12–2030.

¶33 As the successful party on appeal, however, Primary Consultants is entitled to recovers its costs, *see* A.R.S. § 12–342 (2003), contingent on its compliance with Arizona Rule of Civil Appellate Procedure 21(a).

## CONCLUSION

¶34 Given the stipulation as to the nature of Primary Consultants' business and how it uses voter information, we conclude that the County improperly denied Primary Consul-

tants access to the voter information sought. The County's denial was based on an incorrect interpretation of the definition of "commercial purpose." The County also improperly denied Primary Consultants access to the non-voter records sought. The ruling of the trial court is reversed and this matter is remanded for further proceedings consistent with this Opinion.

CONCURRING: MAURICE PORTLEY, Presiding Judge and JEFFERSON L. LANKFORD, Judge.