179 P.3d 960

Dr. Sandra DOWLING, in her official capacity as Superintendent of Schools, Maricopa County, Arizona, Plaintiff/Appellee–Cross Appellant,

v.

Don STAPLEY; Fulton Brock; Andrew Kunasek; Mary Rose Wilcox; Max W. Wilson, in their official capacities as Members of the Board of Supervisors, Maricopa County, Arizona, Defendants/Appellants–Cross Appellees.

No. 1 CA–CV 06–0503.

Court of Appeals of Arizona, Division 1, Department B.

March 27, 2008.

Cantelme and Brown, P.L.C. By David J. Cantelme, Susan V. Myers, Samuel Saks, Phoenix, Attorneys for Plaintiff/Appellee–Cross Appellant.

Shughart Thomson & Kilroy, P.C. By Thomas K. Irvine, Rebekah W. Francis, Phoenix, Attorneys for Defendants/Appellants–Cross Appellees.

## OPINION

BARKER, Judge.

¶ 1 The members of the Maricopa County Board of Supervisors ("Board") appeal the superior court's decision granting in part the special action relief requested by Dr. Sandra Dowling. Dowling cross-appeals the superior court's denial of her requested injunctive relief. This case requires us to determine the narrow issue of who—as between the Board and Dowling acting in her capacity as the Maricopa County Superintendent of Schools ("Superintendent")—has the statutory authority under Arizona Revised Statutes ("A.R.S.") section 15–308(B) (Supp.2007) to offer educational services to Maricopa County's homeless children through an accommodation school.

### I.

¶ 2 The relevant facts are undisputed. Dowling has been the duly elected Superintendent since 1988, and in that capacity she has served as the Governing Board of the Maricopa County Regional School District, which is also known as the Accommodation District ("District"). On April 7, 2006, the Board unanimously adopted a resolution ("Resolution") that stated, in relevant part:

> WHEREAS, the [Superintendent] established [the District] which has been in operation for many years; and

> WHEREAS, A.R.S. [§ ] 15–308.B states that a "county" "may" offer educational services to homeless children or alternative education programs and, thus Maricopa County can withdraw and terminate its offering of A.R.S. [§ ] 15–308.B services, and

> WHEREAS, Maricopa County, through the [Board], has offered services pursuant to A.R.S. [§ ] 15–308.B which have been provided by the District. . . .

> NOW THEREFORE, BE IT RESOLVED THAT:

> 1. A.R.S. [§ ] 15–308.B states that the "county" "may" offer educational services to homeless children or alternative educational programs. The Board hereby terminates its authorization, whether express or implied, for Maricopa County to offer A.R.S. [§ ] 15–308.B services and programs as of June 30, 2006.

> 2. After June 30, 2006, no A.R.S. [§ ] 15–308.B programs or services shall be offered by the County and thus by either the [Superintendent] or the District.

¶ 3 On June 1, 2006, the Superintendent filed a special action complaint in superior court seeking declaratory and injunctive relief. Specifically, she requested that the Resolution be declared null and void because the Board does not have the authority to close District-run schools for homeless children. She also sought to enjoin the Board from taking action to enforce the Resolution. Oral argument was held on the parties' cross-motions for summary judgment. The superior court issued a signed minute entry on June 21, 2006 accepting special action jurisdiction and granting the Superintendent her requested declaratory relief and denying her injunctive relief. This timely appeal and cross-appeal followed, and we have jurisdiction pursuant to A.R.S. §§ 12–2101(B) and (F)(2) (2003).

### II.

¶ 4 Because the superior court accepted special action jurisdiction, we treat this matter as an appeal and address the merits of its decision. *Bilagody v. Thorneycroft*, 125 Ariz. 88, 92, 607 P.2d 965, 969

(App.1979). When the facts are undisputed, summary judgment is proper if the movant is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c). On appeal from summary judgment, we review questions of law—such as the meaning and effect of statutes—de novo. *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 213 Ariz. 541, 544, ¶ 10, 145 P.3d 638, 641 (App.2006). We review a denial of injunctive relief for a clear abuse of discretion. *Kromko v. City of Tucson*, 202 Ariz. 499, 501, ¶ 4, 47 P.3d 1137, 1139 (App.2002). We first address the issue presented in the appeal and then turn to the cross-appeal.

### III.

#### A.

¶ 5 The Board challenges the superior court's determination that the Superintendent has the sole authority under A.R.S. § 15–308 (Supp.2006) [1] to "decide whether to provide" educational services to homeless children through an accommodation school.[2] That statute provides, in relevant part:

§ 15–308. Providing educational services of an accommodation school

A. *The county school superintendent may provide educational services of an accommodation school to the school districts in the county using the facilities of the accommodation school.* The county school superintendent shall administer the program and shall develop a fiscal year budget according to the process specified for school districts.

B. *A county may offer educational services to homeless children* or alternative education programs as defined in § 15–796 through an accommodation school.[3]

C. Until January 1, 2010, *the county board of supervisors shall not provide for necessary expenses* pursuant to § 15–1001, subsection A, paragraph 5, *without an intergovernmental agreement with the county school superintendent* which shall set forth the county's responsibility, if any, for financial contributions to the accommodation school budget, any conditions related to the expenditures and any financial reporting required of the county school superintendent. The county school superintendent shall provide a report to the county board of supervisors by April 1 of each year, on the county school superintendent's plans for the provision of accommodation school services for the next school year and the projected number of students at each accommodation school in the district. By June 1 of each year, the county school superintendent shall provide the county board of supervisors with estimated revenues from the state and other financial information the county board of supervisors may request.

A.R.S. § 15–308 (emphasis added).

¶ 6 The Board argues that the word "county" as used in subsection B refers exclusively to a county's board of supervisors. Among other arguments, the Board points to A.R.S. § 11–201(A) (2001), which sets forth generally the "powers of a county" and provides that those powers "shall be exercised only by the board of supervisors or by agents and officers acting under its authority and authority of law." [4] The Board thus argues that it has

---

1. Subsection (C) became law on April 18, 2006. 2006 Ariz. Sess. Laws, Ch. 178, § 1 (2nd Reg. Sess.). The Board adopted the Resolution on April 7, 2006. The Resolution has an effective date of June 30, 2006. Accordingly, we consider subsection (C) to be applicable in determining the validity of the Resolution.

2. The Board takes issue with the superior court's rejection of the difference in the statutory language between the ability to "offer" services as set forth in subsection (B) and to "provide" services as set forth in subsection (A). While not determinative of our decision, we view the terms as different, with "offering" services being a necessary predicate to "providing" services. This conclusion flows from the requirement that

"[w]e give words their usual and commonly understood meaning unless the legislature clearly intended a different meaning." *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990) (citation omitted).

3. Tautologically, one definition of "Accommodation School" is, "[a] school that provides educational services to homeless children or alternative education programs as provided in § 15–308, subsection B." A.R.S. § 15–101(1)(b).

4. The full text of A.R.S. § 11–201(A) is as follows:
A. The powers of a county shall be exercised only by the board of supervisors or by agents and officers acting under its authority and authority of law. It has the power to:

the sole authority to determine whether services under A.R.S. § 15–308(B) may be "offered," as per subsection (B) and thus "provided," as per subsection (C).

¶ 7 Similarly, but for different reasons, the Superintendent contends that her office has sole authority, in all circumstances, to establish accommodation schools pursuant to § 15–308(A). She asserts that § 15–308(A) specifically states that "the county superintendent may provide" the services referenced. The Superintendent also asserts that the legislative history, the prior dealings between the Board and the Superintendent, and an Attorney General Opinion support her position.

¶ 8 "The primary rule of statutory construction is to find and give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). To determine that intent, we look first to the language of the statute. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). We construe potentially conflicting passages in a harmonious fashion to give effect to the legislature's meaning. *State v. Wagstaff*, 164 Ariz. 485, 491, 794 P.2d 118, 124 (1990) ("We strive to construe a statute and its subsections as a consistent and harmonious whole.") (citation omitted). We must, if reasonably possible, give effect to each word in a statute. *Williams v. Thude*, 188 Ariz. 257, 259, 934 P.2d 1349, 1351 (1997) ("Each word, phrase, clause, and sentence [of a statute] must be given meaning so that no part will be void, inert, redundant or trivial.") (alteration in original) (emphasis omitted) (quoting *City of Phoenix v. Yates*, 69 Ariz. 68, 72, 208 P.2d 1147, 1149 (1949)).

¶ 9 We reject both parties' contentions that they are the sole entity that is the "county" for purposes of offering the services set forth in A.R.S. § 15–308(B). If the superintendent's interpretation was accurate, it would have been a simple matter for the legislature to say, in § 15–308(B), that the "county school superintendent" may offer the enumerated educational services as it did in subsection (A). This same principle applies to the Board. The legislature has shown that it knows how to specify either the Superintendent or the Board when that is what it means. *See, e.g.* A.R.S. §§ 15–341(H), 15–456, 15–907, 15–973(F), 15–991(C), 15–992, 15–994, 15–1403, 15–1404(A), 15–1405, 15–1409 (all referencing the county board of supervisors or board of supervisors); *see, e.g.* A.R.S. §§ 15–302, 15–304, 15–306, 15–308(A), 15–913 (all referencing the county school superintendent). Instead, the legislature designated neither entity but used a different term and said the "county" may offer these services.

¶ 10 Additionally, if the Board's "all or nothing" approach as to what "county" means was accurate, there would be limited meaning, if any meaning at all, to the phrase in § 15–308(A) that the Superintendent "may provide" the services. Under the Board's construction, the Superintendent would be unable to exercise this statutory power without permission from the Board. This result is contrary to our rules of statutory construction requiring that we give meaning to each statutory phrase, if possible. *Williams*, 188 Ariz. at 259, 934 P.2d at 1351. Thus, we focus our analysis on what the legislature meant by the term "county" in § 15–308(B).

¶ 11 We first note that Title 15 contains a definitions section. A.R.S. § 15–101 (Supp.2007). That section, however, provides no statutory definition of "county." *Id.* When no statutory definition is provided, we turn to common ordinary definitions of the term at issue. *See Lake Havasu City v. Ariz. Dep't of Health Servs.*, 202 Ariz. 549, 553–54, ¶ 16, 48 P.3d 499, 503–04 (App.2002) (utilizing common dictionary definitions when no statutory definition is provided); *Circle K*

---

1. Sue and be sued.
2. Purchase and hold lands within its limits.
3. Make such contracts and purchase and hold such personal property as may be necessary to the exercise of its powers.
4. Make such orders for the disposition or use of its property as the interests of the inhabitants of the county require.

5. Levy and collect taxes for purposes under its exclusive jurisdiction as are authorized by law.
6. Determine the budgets of all elected and appointed county officers enumerated under § 11–401 by action of the board of supervisors.

*Stores, Inc. v. Apache County,* 199 Ariz. 402, 408, ¶ 18, 18 P.3d 713, 719 (App.2001) ("By declining to define a statutory term, the legislature generally intends to give the ordinary meaning to the word.") (citing *Kessen v. Stewart,* 195 Ariz. 488, 491, ¶ 6, 990 P.2d 689, 692 (App.1999)). In this regard, "county" is defined as the "largest territorial division for local government in state," Black's Law Dictionary 245 (6th ed.1991), or "the largest territorial division for local government within a state of the U.S." Merriam–Webster's Collegiate Dictionary 265 (10th ed.2001); *see also Hunt v. Mohave County,* 18 Ariz. 480, 483, 162 P. 600, 602 (1917) ("The counties are political subdivisions of the state created to aid in the administration of the state's laws and for the purpose of local self-government."); *Haupt v. Maricopa County,* 8 Ariz. 102, 105, 68 P. 525, 526 (1902) ("A county is the local subdivision of a state or territory. It is created by the state for the purposes of government."). Thus, we construe the word "county" in § 15–308(B) to refer to its generally understood meaning: a political subdivision of the state. *Canon,* 177 Ariz. at 529, 869 P.2d at 503 (looking first to the language of the statute). This does not answer the question of who can *act* for the county for purposes of subsection (B). In examining the statute as a whole, *Wagstaff,* 164 Ariz. at 491, 794 P.2d at 124, we consider that subsections (A) and (C), along with the related statutes, define which entity or entities act on behalf of the county in a particular circumstance. In particular, as described below, the authority to offer and provide or implement services under § 15–308 will frequently turn on the source of funding for the services.

## B.

▮ ¶ 12 In considering which entity or entities may act for the county for purposes of subsection (B) we note that section 15–308(A) gives the Superintendent permissive authority ("may provide") to establish accommodation school services. However, § 15–1001(A)(5) (2002) clearly gives to the Board

the authority over the funding of, and budgeting for, an accommodation school. That statute directs the Board to budget for "necessary expenses for the establishment and conduct of accommodation schools pursuant to § 15–308." Section 15–308(C) is even more explicit in providing that the Board has no obligation to provide funding "without an intergovernmental agreement with the county school superintendent." Thus, it seems plain that the legislature intended the term "county" to refer to a collaborative effort, a form of checks and balances, involving both the Board and the Superintendent when county funds are requested.[5]

▮ ¶ 13 Specifically, reading all three subsections of § 15–308 in a harmonious fashion, a county school superintendent only has the "sole discretion" to establish an accommodation school (or offer an alternative education program) to the extent no monies are required from the county's coffers. Such a scenario may be possible through grant monies or other state or federal monies. However, to the extent county monies are required, § 15–1001(A)(5) provides—and § 15–308(C) reinforces—that permission must be obtained from the Board. It makes little sense to grant sole authority to the county school superintendent to "offer" accommodation school services if the Board holds the purse strings, which must be loosened to permit the services to go into effect. Thus, in summary, we hold that: (1) the county school superintendent has sole discretion to provide the services in § 15–308(A) when no monies are required from the involved county; and (2) when monies are required from the county, neither the county school superintendent nor the Board has sole discretion to offer such services, but must work collaboratively such that the Board agrees to fund (subsection (C)) and the Superintendent agrees to "provide" or implement (subsection (A)) the proposed services. In making this holding, we do not determine that the Board must make such funding available if requested by the Superintendent;

5. We do not rule on whether entities other than the Board and the Superintendent may act on behalf of the "county" in this regard. We stress that the question before us only pertains to who

has the authority to act on behalf of the "county" under § 15–308(B) as between the Board and the Superintendent.

rather, pursuant to A.R.S. § 15–1001(A)(5) and § 15–308(C), the Board has authority to determine whether and in what amount, if any, to provide the funding.[6]

### C.

¶ 14 The Superintendent, as mentioned earlier, argues that the legislative history, the actions of the parties and an earlier Attorney General Opinion compel a conclusion contrary to what we have determined.

¶ 15 As to the legislative history, there are snippets of legislative history that can support a wide variety of constructions. The Superintendent points to comments from one representative, during a sub-committee hearing on subsection (C), that "a county school superintendent has sole discretion on whether to establish an accommodation school." However, at that same hearing, the response to that statement indicated that subsection (C) provided that if the proposed school "rel[ied] entirely on state aid [ the superintendent] would not have to ask the board; however, if the accommodation school is going to be formed and aid will be expected from the county, an IGA [intergovernmental agreement] would be necessary." Our holding makes clear that if county funds are required, the services could not be offered unless the IGA, as subsection (C) requires, is first in place.

¶ 16 As to the Attorney General Opinion in question, on July 28, 1998, the Arizona Attorney General issued Opinion I98–006 ("Attorney General Opinion") concerning the powers of county school superintendents and county boards of supervisors to establish and operate accommodation schools. The Attorney General Opinion concluded "that the county school superintendent has the power to establish and operate

an accommodation school, whereas the county board of supervisors has the power to budget funds for the county school superintendent to operate the accommodation school." Attorney General Opinion at 3. The Attorney General, whose opinion predated the clarifying enactment of subsection (C), held: "although we determine that a county school superintendent has sole discretion on whether to establish an accommodation school and whether to offer an alternative education program, we recognize the prominent role the board of supervisors plays in funding that endeavor." *Id.* As our holding indicates, we agree largely, but not in whole, with the Attorney General Opinion. We give respect to, but are not bound by, Attorney General Opinions. *Logan v. Forever Living Prods. Int'l, Inc.,* 203 Ariz. 191, 194 n. 4, ¶ 10, 52 P.3d 760, 763 n. 4 (2002) ("[T]he Attorney General's Opinion does not constitute precedent regarding statutory construction. Opinions of the Attorney General are due our respect, but are advisory and not binding."). The Superintendent only has sole discretion to develop and implement accommodation schools when no county monies are involved. The Attorney General did not have the benefit of subsection (C) in rendering his analysis.

¶ 17 Finally, as to the dealings between the parties, the Superintendent points to a long history, from 1992 until 2006, of the Board acquiescing to funding requests from the Superintendent and never seeking to "offer" services. That the Board did not exercise its power to withhold funding (now expressly provided in subsection (C)) does not mean that it did not then, or does not now, possess it. And our holding does not, under any scenario, permit the Board to affirmatively offer and provide services pursuant to § 15–308(B), independent of the Superintendent.[7]

---

6. In one sentence of text and a footnote in her brief, the Superintendent suggests there may be constitutional issues under the general and uniform public schools section of the Arizona Constitution, article XI, § 1, "depending on the circumstances," that may preclude the Board from refusing all or part of a Superintendent's funding request for accommodation schools. As no such circumstances have been identified here, we decline to address whether that constitutional provision applies in this setting, and if so, what the outcome would be. *See Vigil v. Herman,* 102

Ariz. 31, 36–37, 424 P.2d 159, 164–65 (1967) ("We have reviewed the assignments [of error] and find nothing in them which makes it necessary to depart from our customary practice of not deciding issues, unless required to do so in order to dispose of the appeal under consideration.").

7. We reject the Board's contention that it has sole authority to affirmatively offer and provide services, because that contention is inconsistent

## D.

■ ¶ 18 To conclude this issue, we affirm insofar as the superior court declared that the Resolution issued by the Board was null and void. In the Resolution, the Board unilaterally declared that no services pursuant to § 15–308(B) would be offered in the county. As set forth above, this Resolution was in error as the Board has no ability to unilaterally direct how the Superintendent proceeds under § 15–308(B) when county monies are not being utilized. However, insofar as the superior court ruled that the Superintendent had sole discretion under § 15–308(B) to offer or provide services when county monies are needed, the superior court erred for the reasons set forth above.

## IV.

■ ¶ 19 The Superintendent cross-appeals the superior court's ruling as to injunctive relief. The superior court determined that the Superintendent's request for injunctive relief was moot given the court's finding that the Resolution was void. We discern no abuse of discretion in that determination.

¶ 20 Section 12–1801, sets forth the following bases for issuing an injunction:

1. When it appears that the party applying for the writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of *some act* prejudicial to the applicant.

2. When, pending litigation, it appears that a party is doing *some act* respecting the subject of litigation, or threatens or is about to do *some act*, or is procuring or suffering *some act* to be done, in violation

of the rights of the applicant, which would tend to render the judgment ineffectual.

3. In all other cases when applicant is entitled to an injunction under the principles of equity.

A.R.S. § 12–1801 (2003) (emphasis added).

¶ 21 Sections 12–1801(1) and (2) clearly require "some act" for a court to issue an injunction. The record in the matter before us does not indicate that the Board has taken any specific, concrete steps to unilaterally stop accommodation services in the District. The briefs allege no such conduct and none was presented to the superior court when it considered the request for injunctive relief. Thus, there is no action by the Board, on the record before us, to be enjoined.[8]

¶ 22 The cases cited by the Superintendent are readily distinguishable on this basis. For example, in *Zeigler v. Kirschner* this court held that injunctive relief was properly sought when the plaintiffs alleged that the director of the Arizona Health Care Cost Containment System acted arbitrarily and illegally when he performed audits for purposes of blocking county eligibility determinations regarding patients' indigency classification. 162 Ariz. 77, 84, 781 P.2d 54, 61 (App.1989). Similarly, in another matter we considered letters from a city officer to city employees requiring them to take a polygraph examination or face termination to be "acts" threatening the employees' protectable employment interests. *Rivera v. City of Douglas*, 132 Ariz. 117, 119, 644 P.2d 271, 273 (App.1982). Thus, we held that the employees were entitled to seek injunctive relief. *Id.*

---

with our interpretation of § 15–308 as set forth above.

8. We note that there is another matter pending on appeal regarding certain of these parties and the District. *Schweikert et al v. Dowling*, 1 CA–CV 07–0745. In her Opening Brief in that matter, Dowling "appeals from an order of the trial court granting a motion of the Maricopa County Board of Supervisors to strike Dr. Dowling as a party" from consolidated cases in the superior court dealing with the District. The record in that matter shows a judgment entered based upon an agreement between the District, the

Board, and the County Treasurer. Among the terms in the thirty-page settlement agreement approved by the court are an agreement that the district "shall ... ensure that no A.R.S. § 15–308(B) students are enrolled in its schools after June 2008." The judgment to which the parties stipulated, and the court approved, also provided for $4.8 million owed by the District to Maricopa County for "accumulated deficit" and "debt." A motion to consolidate that matter with this matter has been denied. Accordingly, we do not address it. We limit ourselves to the factual and procedural record presented with regard to this particular case.

¶ 23 On the record before us, there are no acts of the Board to enjoin. Accordingly, the superior court did not abuse its discretion in denying the Superintendent her requested injunctive relief.

## V.

¶ 24 For the foregoing reasons, we affirm the superior court's rulings as modified.

CONCURRING: ANN A. SCOTT TIMMER and PATRICIA A. OROZCO, Judges.