219 P.3d 285

The **INDUSTRIAL COMMISSION OF ARIZONA, a state government entity, Plaintiff/Appellant/Cross–Appellee,**

v.

**OLD REPUBLIC INSURANCE COMPANY, a foreign corporation; Zurich American Insurance Company, a foreign corporation, Defendants/Appellees,**

and

**Liberty Insurance Corporation, a foreign corporation, Defendant/Appellee/Cross–Appellant.**

No. 1 CA–CV 08–0289.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 3, 2009.

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C. by Jose de Jesus Rivera, Kathleen Hale, Phoenix, Gerald S. Maltz, Rebecca A. Reed, Tucson, Attorneys for Plaintiff/Appellant/Cross–Appellee.

Renaud Cook Drury Mesaros, PA by Steven G. Mesaros, Kevin R. Myer, Phoenix, Attorneys for Defendants/Appellees Old Republic Insurance Co. and Zurich American Insurance Co.

Low & Cohen, PLLC by Charles R. Cohen, Phoenix and Barger & Wolen, LLP by Gary A. Bresee, Pro Hac Vice, San Francisco, CA, Attorneys for Defendant/Appellee/Cross–Appellant Liberty Insurance Corp.

**OPINION**

PORTLEY, Judge.

¶ 1 The Arizona Legislature has provided that an employer who purchases a deductible workers' compensation insurance policy is entitled to pay a reduced premium pursuant to Arizona Revised Statutes ("A.R.S.") section 23–963.01 (Supp. 2008).[1] We are asked to decide whether the trial court erred when it concluded that workers' compensation in-

---

1. We cite the current versions of A.R.S. §§ 23–963.01, 23–961, 23–961.01 because they have not been amended in any way that substantially changes the relevant provisions.

surance carriers do not have to pay taxes on the difference between a full premium and the reduced premium charged for a deductible policy under A.R.S. § 23–961(J) (Supp. 2008). In its cross-appeal, Liberty Insurance Corporation ("Liberty") asks us to find that the trial court erred when it limited Liberty's award of attorneys' fees to the statutory rate of seventy-five dollars per hour. Because we find that the difference between a full premium and the reduced premium charged for a deductible workers' compensation insurance policy should not be taxed under the applicable statutes, we affirm the judgment. Similarly, we find that the trial court did not abuse its discretion when it limited Liberty's fee award to the statutory rate.

## PROCEDURAL HISTORY

¶ 2 The Industrial Commission of Arizona ("ICA") filed a declaratory judgment complaint against three insurance carriers, Liberty, Old Republic Insurance Company ("Old Republic"), and Zurich American Insurance Company ("Zurich") (collectively "the Carriers"), and requested that the superior court require the insurers to pay increased taxes on deductible compensation insurance policies. Liberty filed a motion to dismiss. Old Republic and Zurich joined Liberty's motion and filed a separate joint motion to dismiss. The Carriers argued that the Complaint should be dismissed for lack of jurisdiction, failure to state a claim under Arizona Rule of Civil Procedure 12(b)(6), failure to join indispensable parties, and violation of equal protection rights.

¶ 3 The trial court, after oral argument, found that it had subject matter jurisdiction under the Declaratory Judgment Act, A.R.S. § 12–1831 (2003), and dismissed the Complaint for failure to state a claim under Arizona Rule of Civil Procedure 12(b)(6). The court did not address the other issues.

¶ 4 Liberty subsequently filed an application for costs and attorneys' fees. Liberty requested fees at a higher hourly rate than the statutory rate of seventy-five dollars. *See* A.R.S. § 12–348(A)(1), (E)(2) (2003). Specifically, it asked the court to find that cost of living increases and the limited availability of qualified attorneys for the proceed-

ing justified a higher fee. Zurich and Old Republic also filed fee applications and argued that they qualified for a fee award higher than the rate prescribed by statute. The Carriers were awarded fees at the statutory rate. ICA filed its appeal and Liberty cross-appealed the award of attorneys' fees. We have jurisdiction pursuant to A.R.S. §§ 12–2101(B) (2003) and 12–348(D) (2003).

## DISCUSSION

¶ 5 ICA contends that the trial court erred by dismissing the Complaint. It argues that the two statutory provisions, A.R.S. §§ 23–961(J) and 23–963.01, require workers' compensation carriers to be taxed on the difference between a full premium and the reduced premium charged for a deductible policy.

¶ 6 We review motions to dismiss de novo. *See Baker v. Rolnick*, 210 Ariz. 321, 324, ¶ 14, 110 P.3d 1284, 1287 (App.2005) (citing *Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, 124, ¶ 6, 970 P.2d 954, 956 (App.1998)). We also review the trial court's interpretation of a statute de novo. *State v. Peek*, 219 Ariz. 182, 183, ¶ 6, 195 P.3d 641, 642 (2008). When interpreting a statute, our goal is to give effect to the legislature's intent. *Id.* at 184, ¶ 11, 195 P.3d at 643. We will first consider the statutory language, which provides "the best and most reliable index of a statute's meaning." *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991); *see also Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

¶ 7 "[W]here the language is plain and unambiguous, courts generally must follow the text as written." *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). If the language is clear and unambiguous, we need not resort to other methods of statutory construction. *Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App.1995). We will give effect to each word or phrase and apply the "usual and commonly understood meaning unless the legislature clearly intended a different meaning." *Bilke v. State*, 206 Ariz. 462, 464–65, ¶ 11, 80 P.3d 269, 271–72 (2003) (quoting *State v. Korzep*,

165 Ariz. 490, 493, 799 P.2d 831, 834 (1990)). Unless clear indication of legislative intent to the contrary exists, we will not "construe the words of a statute to mean something other than what they plainly state." *Canon Sch. Dist. No. 50*, 177 Ariz. at 529, 869 P.2d at 503.

¶ 8 If the statutory language is ambiguous, however, "we look to the 'rules of statutory construction,' " *Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 201, ¶ 3, 150 P.3d 773, 774 (App.2007) (*quoting Lewis v. Ariz. Dep't of Econ. Sec.*, 186 Ariz. 610, 614, 925 P.2d 751, 755 (App.1996)), and "consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). We will also "read the statute as a whole, and give meaningful operation to all of its provisions." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). Different sections of a single statute should be interpreted consistently. *Id.*

¶ 9 The Arizona Workers' Compensation Act ("the Act") requires all employers to have workers' compensation insurance for their employees. *See* A.R.S. § 23–961(A). Employers may meet the statutory requirement in one of three ways. *Id.* First, an employer may purchase an insurance policy through the State Compensation Fund ("SCF"). A.R.S. § 23–961(A)(1). Second, the employer can purchase insurance from an authorized insurance carrier. *Id.* The insurance policy purchased may be for full coverage or may include a deductible. *See* A.R.S. §§ 23–963, –963.01(A). Under a deductible policy, the carrier pays the entire compensable claim, but is reimbursed by the employer for any amount paid up to the amount of the deductible. A.R.S. § 23–963.01(B). Finally, an employer may qualify to be self-insured to pay the compensation directly or enter into a pool with other self-insured employers to ensure that any claim can be paid. *See* A.R.S. §§ 23–961(A)(2), –961.01 (Supp. 2008).

¶ 10 Workers' compensation carriers are taxed pursuant to § 23–961(J).[2] Every insurance carrier is required to pay taxes on all premiums "collected or contracted for" during the year. *Id.* Self-insured employers are taxed based on a calculation on the amounts they would have paid in premiums if they were fully insured with the SCF. *Id.*

## I.

¶ 11 An insurance carrier naturally charges a lower premium for deductible insurance than for coverage under which there is no deductible. Because carriers receive lower premiums for deductible insurance policies, the amount they pay in taxes on those policies is correspondingly smaller. The ICA contends that the Carriers should be taxed on deductible policies as if the premiums they received on those policies were the same as on policies containing no deduction. It argues that the plain meaning of the requirement that taxes be paid on "all premiums collected or contracted for" in § 23–961(J) includes premium discounts granted by carriers to employers who purchase deductible policies. Specifically, ICA argues that the contracted-for premium is "the premium that the employer actually pays combined with the premium that is 'treated as paid' " or the "premium without reduction for the deductible." ICA asserts that its construction of § 23–961(J) is required by § 23–963.01(B), which provides that on a deductible policy,

2. The relevant portion of the tax provision states: Every insurance carrier, including the state compensation fund ... shall pay to the state treasurer for the credit of the administrative fund, in lieu of all other taxes on workers' compensation insurance, a tax of not more than three per cent on all premiums collected or contracted for less the deductions from such total direct premiums for applicable cancellations, returned premiums and all policy dividends or refunds paid or credited to policyholders within this state and not reapplied as premiums.... Every self-insured employer, including workers' compensation pools ... shall pay a tax of not more than three per cent of the premiums which would have been paid by the employer if the employer had been fully insured under a plan available from the state compensation fund.... The commission shall adopt rules that shall specify those methods to be used for the calculation of rates and premiums and that shall be the basis for the taxes assessed to self-insured employers.

"[t]he payment ... of deductible amounts ... shall be treated under the policy in the same manner as the payment ... of premiums."

¶ 12 The Carriers, on the other hand, contend that § 23–963.01(B) refers to the insurance carrier's right to cancel a policy for nonpayment of deductible amounts in the same manner as nonpayment of premiums, and does not relate to the issue of taxation. They argue that their interpretation is supported by A.R.S. § 23–963.01(C), which clarifies that the cancellation of an insurance policy may not be retroactive for the nonpayment of a deductible.[3]

¶ 13 The language of § 23–961(J) provides that "[e]very insurance carrier ... shall pay to the state treasurer ... a tax of not more than three per cent on all premiums collected or contracted for during the year." There is no dispute between the parties that the language is clear. ICA argues, however, that there is ambiguity in § 23–963.01. We disagree.

¶ 14 Both §§ 23–963.01 and 23–961(J) are in the same Article, whose general purpose is to fund the Workers' Compensation System, and thus should be read together. *See Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 10, 91 P.3d 1031, 1033 (App.2004) (stating that when statutes relate to the same subject or have the same general purpose, they should be read as though they "constitute one law"). Read together, there is no ambiguity in the language of either statute. Like the trial court, we agree that when § 23–963.01(B) is read in conjunction with § 23–963.01(C), it is clear that the disputed sentence—"[t]he payment ... of deductible amounts ... shall be treated under the policy in the same manner as the payment ... of premiums"—relates to the continuation or cancellation of a deductible coverage policy

and not to taxation. The trial court correctly found that:

> [b]ecause A.R.S. § 23–963.01(B) requires the insurer to advance sums that are not covered vis-á-vis the employer, the statute imposes an incentive for employers to reimburse the deductible amounts by providing "[t]he payment or nonpayment of deductible amounts by the insured employer to the carrier shall be treated under the policy in the same manner as payment or nonpayment of premiums." That language empowers an insurer that does not receive a deductible reimbursement to terminate a policy prospectively just as if the premium had not been paid.[4]

¶ 15 Further, none of the provisions in § 23–963.01 mention taxation. As the Carriers point out, the sentence states "under the policy," suggesting an intent to refer to contractual obligations under the policy. The absence of any reference to tax in the provision suggests that the legislature did not intend the contested language to be as expansive as ICA argues. *See Ariz. Bd. of Regents v. State ex rel. Ariz. Pub. Safety Ret. Fund Manager Adm'r*, 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989) ("Where the legislature has specifically used a term in certain places within a statute and excluded it in another place, courts will not read that term into the section from which it was excluded.") Because the legislature did not specifically provide that carriers will be taxed at the same rate for all workers' compensation insurance plans, we will not read that language into the statute.

¶ 16 Moreover, § 23–961(J) prescribes how a premium is to be calculated for a self-insured employer, but fails to include or mention any calculation for deductible coverage policies. Thus, there is no evidence that the legislature intended for the words "premiums collected or contracted for" to mean anything

---

3. Specifically, § 23–963.01(C) states:
   The nonpayment of deductible amounts by the insured employer to the carrier under subsection B of this section shall not relieve the insurance carrier from payment of compensation for injuries or death sustained by an employee during the period of time the agreement, contract or policy was in effect. No agreements, contracts or policies providing deductible amounts for workers' compensation coverage shall be terminated retroactively for nonpayment of deductible amounts.

4. The second sentence of § 23–963.01(C) supports the ruling because it provides that "[n]o agreements, contracts or policies providing deductible amounts for workers' compensation coverage shall be terminated retroactively for nonpayment of deductible amounts."

other than their plain meaning. *Canon Sch. Dist. No. 50,* 177 Ariz. at 529, 869 P.2d at 503 (stating that when there is no "clear indication of legislative intent to the contrary," the court will not "construe the words of a statute to mean something other than what they plainly state").

¶ 17 Although ICA argues that "[t]he amount of the deductible is not a premium ... [r]ather ... it is the payment of the deductible that equates to the payment of [a] premium," a deductible is not a premium. A premium is the consideration an employer pays to an insurer in exchange for its assumption of a specified risk, and varies in proportion to the risk assumed. *See* A.R.S. § 20–1103 (2002); 5 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* §§ 69:1, 69:2, at (3d ed. 1996); Webster's Ninth New Collegiate Dictionary 280 (1990) (defining premium as "the consideration paid for a contract of insurance"). On the other hand, a deductible is "a clause in an insurance policy that relieves the insurer of responsibility for an initial specified loss of the kind insured against." Webster's Ninth New Collegiate Dictionary 332 (1990). Therefore, there is no uncertainty in the terms of the statute, and consequently no ambiguity.

■ ¶ 18 ICA also contends that if the premium discounts offered in deductible insurance policies are not treated as premiums contracted for, an unequal tax assessment results. In the case of deductible compensation insurance, employers pay a reduced premium based on their agreement to pay deductible amounts. Thus, because insurance carriers that sell deductible policies receive smaller premiums, ICA argues these insurance carriers pay "a disproportionably smaller share of taxes" than a traditional policy carrier. Further, ICA asserts that the "cost" of this unequal tax treatment is passed along from traditional insurance carriers to small business owners who, ICA asserts, cannot afford to purchase a deductible coverage policy.

¶ 19 ICA relies on *Gosnell Development Corp. v. Arizona Department of Revenue,* 154 Ariz. 539, 541, 744 P.2d 451, 453 (App. 1987), to support its position that "a State taxing authority cannot tax business competitors differently." *Gosnell,* however, found that the legislature can tax certain classes differently, as long as the burden imposed on each person in the class is the same. *Id.* at 542, 744 P.2d at 452. There, the court stated that "if there is no substantial difference between the operation of [ ] two organizations, it would amount to an unfair denial of equal tax treatment." *Id.* (quoting *Wash. Theatre Club, Inc. v. District of Columbia,* 311 A.2d 492, 495 (D.C.1973)).

¶ 20 Here, the premium for a full coverage compensation policy and the reduced premium of a deductible policy are taxed differently because the carrier assumes different amounts of risk under the different policies. In deductible compensation policies, employers are directly responsible for the deductible amount which, in turn, reduces the amount of risk the carrier bears and the amount of the premium. Therefore, insurance carriers that sell deductible policies, and carriers that sell policies without deductibles, are not within the same class for purposes of this analysis. Accordingly, the trial court's statutory interpretation does not create illegal tax assessments.

¶ 21 Finally, ICA argues that the trial court's interpretation jeopardizes the health of the Arizona Workers' Compensation System. We will defer to the legislature the management and funding of the Workers' Compensation System.[5] *See DaimlerChrysler Servs. N. Am., LLC v. Ariz. Dep't of Revenue,* 210 Ariz. 297, 306, ¶ 35, 110 P.3d 1031, 1040 (App.2005) ("It is the business of the legislature, not the judiciary, to set policy.").

## II.

■ ¶ 22 On cross-appeal, Liberty contends that the trial court erred when it refused to award fees in excess of the statutory

5. We note that there have been unsuccessful attempts since 2004 to amend the statute to allow the taxation of the difference between a full premium and the reduced premium in a deductible compensation policy. *See* S.B. 1205, 46th Leg., 2d Reg. Sess. (Ariz. 2004); H.B. 2297, 47th Leg., 1st Reg. Sess. (Ariz. 2005); S.B. 1462, 47th Leg., 1st Reg. Sess. (Ariz. 2005).

rate of seventy-five dollars per hour. *See* A.R.S. § 12–348(E)(2). We review an award of attorneys' fees for abuse of discretion. *Ariz. Water Co. v. Ariz. Dep't of Water Res.*, 205 Ariz. 532, 539, ¶ 29, 73 P.3d 1267, 1274 (App.2003), *aff'd in part, vacated in part on other grounds*, 208 Ariz. 147, 91 P.3d 990 (2004).

¶ 23 Although Liberty argued that the trial court should have awarded fees at a rate higher than seventy-five dollars per hour because of cost of living increases and the limited availability of qualified lawyers, the court had the discretion to consider other factors, and did. *See id.* at 540, ¶ 36, 73 P.3d at 1275 ("[O]ther relevant factors that could be implicated in a decision to award fees, includ[e], without limitation, the quality of the representation and the difficulty of the work ... [and] the court should consider those factors in light of the policy of A.R.S. § 12–348 itself."). Specifically, the trial court found that the case was "a straightforward exercise in statutory interpretation ... [and] the [c]ourt can discern no unique value to justify exceeding the presumptive cap contributed by a brand-new lawyer from another jurisdiction who lacked both substantive experience and familiarity with local practice." After reviewing the record, we agree that it supports the trial court's findings. Consequently, we find no abuse of discretion and affirm the award of attorneys' fees.

¶ 24 The Carriers also request an award of costs and attorneys' fees on appeal pursuant to A.R.S. § 12–341.01(A) (2003). Because the appeal involves statutory construction, we find that the Carriers are entitled to their appellate fees at the statutory rate. We will award them, as the successful parties, their reasonable fees and costs upon compliance with Arizona Rule of Civil Procedure 21(c).

### CONCLUSION

¶ 25 Based on the foregoing, we affirm the judgment which dismissed the Complaint and limited the fees awarded to Liberty to the statutory rate.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and DANIEL A. BARKER, Judge.