CAMPBELL, Judge:
*376 ¶ 1 Attorneys Leonard Karp and Annette Everlove ("Petitioners") appeal from the superior court's ruling awarding them fees in quantum meruit. They argue the court erred by failing to order the Estate of their late client Susan Chalker-with her son David Chalker acting as Personal Representative ("Respondent")-to pay statutorily-mandated interest on that award.[1] For the following reasons, we reverse and remand.
BACKGROUND
I. The Initial 1994 Divorce Proceeding and the Subsequent State and Federal Litigation
¶ 2 Petitioners represented Susan Chalker in her divorce proceeding from Robert Catz, filed in November 1994. At the time the divorce was filed, Robert Catz held investment accounts at various financial institutions, but the following month, he re-titled three accounts with Fidelity Investments (the "Fidelity Accounts") in the names of his two sons, Shawn and Jason Catz.
¶ 3 The superior court entered a default decree of dissolution of marriage in March 1995. The decree awarded Chalker all right, title, and interest in the Fidelity Accounts. Subsequently, Robert, Shawn, and Jason Catz proceeded to file three separate lawsuits in the federal courts in Ohio and Tennessee against Petitioners, Chalker, Fidelity, and others attacking the validity of the Arizona decree. That litigation, and multiple iterations thereof, would oscillate through federal and state courts for almost two decades. Ultimately, the Ninth Circuit dismissed the Catzes' claims against Petitioners in 2009[2] and against Chalker and Fidelity in 2013.[3] On November 14, 2013, the Arizona district court dismissed the last vestiges of these cases with prejudice.
II. Petitioners' Agreements with Chalker Throughout the Litigation
¶ 4 Petitioners began jointly representing Chalker in the divorce action in 1994. Petitioners contend that, by mid-1999, Chalker owed them approximately $273,000 in fees and costs. In February 1999, at Chalker's suggestion, the parties entered into a new fee agreement calling for 50 percent of the Fidelity Accounts to be paid to Petitioners once the Accounts were recovered.
¶ 5 Petitioner Karp and Chalker signed the new fee arrangement ("Retainer/Fee Agreement"), which provided in part:
4. Client agrees to pay to [Petitioners] FIFTY PERCENT (50%) of all sums and/or assets recovered by, or upon [Chalker]'s behalf, arising out of the determination of ownership interest in and to the following accounts: Fidelity Latin American Fund, Fidelity Southeast Asia Fund, Fidelity U.S. Government Reserves; and/or any other accounts held by Fidelity Trust and/or any of its related entities.
...
10. Client further acknowledges and agrees that in the event no recovery is obtained in this matter, the Attorneys fees *377 incurred on behalf of Client in all matters other than that referenced in ¶ 4 above shall remain due and owing in full.
III. Chalker's Death and Petitioners' Claim on her Estate
¶ 6 Susan Chalker died in July 2005. In August 2005, an informal probate was opened in an Arizona superior court. A notice to creditors was mailed to Petitioners on August 4, 2005, stating: "All persons having claims against the estate are required to present their claims within four months after the date of the first publication of this Notice or the claims will be forever barred."
¶ 7 Petitioners timely filed their claim against the Estate ("Claim"), asserting the Estate was indebted to them in "an amount equal to 50% of all sums and/or assets recovered by the Estate of Susan Ruth Chalker, or upon the Estate's behalf arising out of the determination of ownership interest in and to any of the Fidelity accounts," "an amount equal to 50% of any attorney's fees awarded to and recovered by the Estate" in the related actions, costs of $46,406.94, and any additional costs they had incurred on Chalker's behalf since May 1999, as yet undetermined.
¶ 8 David Sobel, the attorney for the Estate, informed Petitioners that the Estate was prepared to file an objection to their Claim, but instead proposed entering an agreement tolling the time for filing their objection pending the outcome of Robert Catz's federal litigation. The Petitioners signed, and the superior court approved, a Tolling Agreement in January 2006, stating, in pertinent part:
3. The time for original presentation of claims expires on December 4, 2005.
4. The personal representative has sixty (60) days from December 4, 2005 to file a notice of allowance or disallowance of claims.
5. The parties agree to extend the personal representative's deadline to file a notice of allowance or disallowance of the Everlove and Karp claim until the following case has been resolved in the United States Federal District Court for the District of Arizona, Case No. CV-03-91-TUC-FRZ.
¶ 9 After the Arizona district court finally dismissed the Catzes' case on November 14, 2013, the Estate filed its notice of disallowance of Petitioners' Claim on November 27, 2013. Petitioners filed their petition for allowance of their Claim on January 15, 2014.
¶ 10 In March 2014, the Estate filed a petition to finally recover the Fidelity Accounts. In July 2014, the superior court issued an order determining that the Fidelity Accounts "are the sole and separate property of The Chalker Estate and that Shawn Catz and Jason Catz have no ownership interest in the Fidelity Accounts." In August 2014, the Fidelity Accounts were transferred to the Estate and liquidated, yielding a total value of over $1.2 million.
¶ 11 The superior court held a bench trial in January 2016. The court determined that Petitioners were not entitled to 50 percent of the Fidelity Accounts under the terms of the 1999 fee agreement. Rather, the court held the Petitioners were each entitled to an award in quantum meruit for services rendered, but that they were not entitled to receive interest on those awards. The superior court ultimately awarded $94,463.00 in attorney fees to Karp, $101,608.00 in attorney fees to Everlove, and $42,438.59 in total costs.
DISCUSSION
¶ 12 Petitioners argue the superior court erred by failing to add interest to their award in quantum meruit, claiming the probate code mandates interest on all allowed creditor claims. We review the trial court's conclusions of law de novo, Sholes v. Fernando , 228 Ariz. 455, 458, ¶ 6, 268 P.3d 1112 (App. 2011), while reviewing its factual findings for clear error, State v. Herrera , 183 Ariz. 642, 648, 905 P.2d 1377 (App. 1995). Whether a party is entitled to an award of prejudgment interest, as well as questions of statutory interpretation, are questions of law that we review de novo. Alta Vista Plaza, Ltd. v. Insulation Specialists Co., Inc. , 186 Ariz. 81, 82, 919 P.2d 176 (App. 1995) ; Hobson v. Mid-Century Ins. Co. , 199 Ariz. 525, 528, ¶ 6, 19 P.3d 1241 (App. 2001). In interpreting a statute, our goal is to give effect to the legislature's intent, and we first consider *378 the statute's language as the most reliable index of its meaning. Indus. Comm'n v. Old Republic Ins. Co. , 223 Ariz. 75, 77, ¶ 6, 219 P.3d 285 (App. 2009) (citations omitted).
¶ 13 Pursuant to Arizona Revised Statutes ("A.R.S.") section 14-3803(A),[4] all claims against a decedent's estate that arose before the decedent's death must be presented within the given statutory timeframe, "whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis." If the personal representative timely disallows any such claim, the claim is barred "unless the claimant files a petition for allowance in the court or commences a proceeding against the personal representative not later than sixty days after the mailing of the notice of disallowance." A.R.S. § 14-3806(A). Once a claimant has timely filed a petition for allowance, the probate court may then allow the claim in whole or in part. A.R.S. § 14-3806(C). Generally, "allowed claims bear interest at the legal rate for the period commencing sixty days after the time for original presentation of the claim has expired ," unless the claim is based on a contract that makes a provision for interest. A.R.S. § 14-3806(E) (emphasis added).
¶ 14 Section 14-3810(A) further provides that, "[i]f a ... contingent or unliquidated claim becomes due or certain before the distribution of the estate, and if the claim has been allowed or established by a proceeding , it is paid in the same manner as presently due and absolute claims of the same class." (emphasis added).
¶ 15 Petitioners argue that, according to the above statutory framework, they timely presented their unliquidated Claim for attorney fees; Respondent disallowed that Claim; and Petitioners timely commenced a proceeding to allow their Claim in probate court. Because the court ultimately awarded Petitioners fees in quantum meruit-i.e., establishing their Claim for attorney fees through that proceeding-they argue their Claim must be "paid in the same manner as presently due and absolute claims of the same class," A.R.S. § 14-3810(A), by "bear[ing] interest at the legal rate" beginning sixty days after the deadline for the original presentation of claims, A.R.S. § 14-3806(E). We agree.
¶ 16 The language of A.R.S. § 14-3806(E) states plainly that "allowed claims bear interest at the legal rate"; it does not differentiate between liquidated or unliquidated claims or make any other qualification applicable here. Section 14-3810(A) further highlights the lack of differentiation between liquidated and unliquidated claims, stating that even unliquidated claims that become due or certain before the distribution of the estate and have been allowed or established by the court are to be paid "in the same manner" as presently due and absolute claims. See State v. Hansen , 215 Ariz. 287, 289, ¶ 7, 160 P.3d 166 (2007) (Wherever possible, rules and statutes should be harmonized and read in conjunction with one another.).
¶ 17 In its ruling, the superior court held: "The Petitioners ... claim interest on the [quantum meruit] amounts. The Personal Representative argues that interest is not allowable under the theory of quantum meruit. In support, they cite Schwartz v. Schwerin , 85 Ariz. 242, 336 P.2d 144 (1959). The case supports the Estate's position." The superior court therefore ordered that Petitioners were not entitled to an award of interest on the quantum meruit awards, but did rule that "Petitioners are entitled to interest at the statutory rate on the costs advanced."
¶ 18 In Schwartz -in which an attorney brought an action against his clients to recover attorney fees in quantum meruit-the Arizona Supreme Court held that, if a "claim is unliquidated and is in dispute," interest is only allowed from the date of judgment "upon the theory that the person liable does not know the sum he owes and therefore can be in no default for not paying." 85 Ariz. at 250, 336 P.2d 144 (citing Am. Eagle Fire Ins. Co. v. Van Denburgh , 76 Ariz. 1, 257 P.2d 856 (1953) ). The supreme court, however, also noted that at the time, unlike some states, *379 "we have no statute governing the allowance of interest in such a situation." Schwartz , 85 Ariz. at 249, 336 P.2d 144. Since the supreme court's decision in Schwartz , Arizona has enacted provisions of the Uniform Probate Code rather than following the common-law principle in matters of probate. While we acknowledge that awarding prejudgment interest on unliquidated claims is inconsistent with Arizona's general rule, see Metzler v. BCI Coca-Cola Bottling Co. , 235 Ariz. 141, 144, 329 P.3d 1043 (2014) (under common law, "prejudgment interest is generally not awardable on unliquidated claims"), we must apply the given statutory language.
¶ 19 Furthermore, to hold that unliquidated claims in probate never bear interest because they are unliquidated-as the superior court effectively did here by applying Schwartz rather than the express mandate of the probate code-would essentially mean that all unliquidated claims which have been timely presented to a decedent's estate would not accrue interest under the statute until the claim is litigated, allowed, and reduced to a sum certain by the probate court. Such a holding would be inconsistent with the purposes of our probate code, which should be construed liberally to "promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors." A.R.S. § 14-1102(A), (B)(3).
¶ 20 Here, the Estate notified Petitioners of the opening for the presentation of claims on August 4, 2005, and stated in the notice that the date of expiration for the presentation of claims was December 4, 2005-a date the parties agreed on, as evidenced by their Tolling Agreement, supra ¶8. Because interest on all allowed claims begins to accrue sixty (60) days after the time for the original presentation of the claim expires, A.R.S. § 14-3806(E), Petitioners' claim for attorney fees began bearing interest as of February 2, 2006. We therefore reverse the decision of the superior court on this issue and remand for proceedings consistent with this opinion.[5]
CONCLUSION
¶ 21 For the foregoing reasons, we reverse and remand the decision of the superior court on the limited issue of interest on Petitioners' awards in quantum meruit. Both parties request an award of attorney fees on appeal and cross-appeal under A.R.S. § 12-341.01 ; as the prevailing party, we award Petitioners their costs on appeal and cross-appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21, but, in our discretion, decline to award either party attorney fees.

In a separate memorandum decision, Karp, et al. v. Chalker, et al. , 1 CA-CV 17-0109 (Ariz. App. September 20, 2018), filed simultaneously with this opinion, see Ariz. R. Sup. Ct. 111(h), we provide additional factual and procedural background as well as reject both Petitioners' remaining arguments and the arguments presented in Respondent's cross-appeal.

See Catz v. Chalker , No. 06-17183 (9th Cir. May 13, 2009) (mem. decision).

See Catz v. Chalker , No. 11-16285 (9th Cir. Mar. 20, 2013) (mem. decision).

Absent material revision since the events in question, we cite to the current version of a statute.

Because we agree with Petitioners that the probate code mandates an award of interest on their quantum meruit claim, we need not address their alternative argument that the superior court erred by not granting an equitable award of interest.