IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.N.

No. 1 CA-JV 22-0227
FILED 4-30-2024

_____

Appeal from the Superior Court in Coconino County
No. S0300SV202100003
The Honorable Angela R. Kircher, Judge *Pro Tempore*

**REVERSED AND REMANDED**

_____

COUNSEL

Harris & Winger PC, Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

McCarthy Weston PLLC, Flagstaff
By Philip McCarthy, Jr.
*Counsel for Appellee Adoption Choices of Arizona*

Coconino County Public Defender, Flagstaff
By Sandra L.J. Diehl
*Counsel for Appellee Child*

_____

**OPINION**

_____

Judge Anni Hill Foster delivered the opinion of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

_____

**F O S T E R**, Judge:

¶1          M.N.'s father ("Father") appeals the order terminating his parental rights. Because Father completed genetic testing and was M.N.'s presumed legal father at the time of the termination hearing, he was not a "putative father" under the law. Accordingly, he was not subject to the statutory requirement that a putative father file a notice of claim of paternity within 30 days of the birth of the child. A.R.S. § 8-106.01. The court knew of the genetic testing results and therefore erred by terminating his parental rights based on a failure to register under A.R.S. § 8-106.01. Accordingly, and for the following reasons, this Court reverses and remands to the superior court.

**FACTS AND PROCEDURAL HISTORY**

¶2          Mother conceived M.N. with Father while she was in a relationship with another man ("Boyfriend"). Mother and Father communicated about the pregnancy. According to Father, he asked Mother to live with him and offered to take a DNA test to determine paternity, but Mother declined. Eventually, Boyfriend threatened Father, and Father temporarily stopped communicating with Mother.

¶3          In March 2021, before M.N. was born, Mother and Boyfriend decided to place M.N. up for adoption. They contacted a private adoption agency, Adoption Choices of Arizona ("Choices"). Mother did not tell Choices about Father and repeatedly affirmed that Boyfriend was M.N.'s only possible father. Meanwhile, Father contacted Mother to ask about her due date, which was the following month. Father offered her a place to stay, which Mother declined.

¶4          A few weeks later, Mother gave birth to M.N. prematurely, and Father visited the infant in the hospital. According to Father, he asked the hospital for a DNA test but was told it could not perform the test.

¶5          The following day, Mother and Boyfriend signed adoption consent forms through Choices. This same day, Choices learned about

Father. However, Mother told Choices that Father could not be M.N.'s father and provided only his nickname with no other identifying information.

¶6        In April 2021, Choices petitioned the juvenile court to terminate Mother and Boyfriend's parental rights to M.N. On April 23, 2021, Choices served Father notice of the pending adoption, starting the 30-day clock for Father to file and serve his paternity action. *See* A.R.S. § 8-106(G)(3).

¶7        On May 21, 2021, Father timely petitioned the family court to establish paternity and decision-making authority over M.N. Father then timely served the petition on Choices on May 24, 2021. That same day, Choices amended its termination petition to include Father, alleging he failed to file a paternity action within 30 days of being served notice of the pending adoption. A.R.S. §§ 8-106(J), -533(B)(5). The record does not indicate that Choices ever served Father with this amended petition, and Choices later withdrew this allegation.

¶8        On September 15, 2021, Choices intervened in Father's family court case, and the family court ordered paternity testing. Father completed testing, and the paternity results filed with the court confirmed by a probability of 99.99% that Father was M.N.'s biological father. No one challenged the veracity of the test. Afterwards, the family court stayed the case pending resolution of Choices' termination petition.

¶9        On December 2, 2021, Choices again amended its termination petition to allege that Father had abandoned M.N., A.R.S. § 8-533(B)(1), and that he had not filed a notice of paternity claim with the putative father's registry as required under A.R.S. § 8-106.01. On December 19, 2021, Choices served Father with the second amended petition. The next month, the juvenile court appointed Father counsel, but counsel did not move the court for entry of a judgment of paternity. *Cf. Albert L. v. Dep't of Child Safety*, 253 Ariz. 146, 149, ¶ 11 (App. 2022) (when the superior court has proper jurisdiction over a matter, it also has "authority to rule on a paternity matter relevant to the dependency").

¶10      In February 2022, Choices moved for partial summary judgment on the alleged termination grounds. Father was later appointed new counsel, who then moved for a judgment of paternity, but the court did not rule on the motion before the trial began. The court eventually granted summary judgment in favor of Choices based only on Father's failure to register with the putative father's registry. After trial on the issue

of M.N.'s best interests, the court terminated Father's parental rights, and Father timely appealed.[1] This Court has jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶11 Father challenges the court's order terminating his parental rights, arguing that (1) the law distinguishes "potential" fathers from "putative" ones, obviating Father's obligation to register with the putative father's registry; (2) the statutes requiring him to both initiate paternity proceedings and register with the putative father's registry violate his procedural and substantive due process rights; (3) his counsel was ineffective by failing to obtain a paternity judgment in juvenile court; (4) the court applied the wrong legal standard in analyzing the child's best interests and failed to weigh all the evidence; (5) the court failed to make sufficient findings of fact or conclusions of law; and (6) the findings it made contained critical factual errors.

¶12 This Court reviews interpretations of statutes, rules, and constitutional issues *de novo*. *Brenda D. v. Dep't of Econ. Sec.*, 243 Ariz. 437, 442, ¶ 15 (2018). "[W]here the language is plain and unambiguous, courts generally must follow the text as written" and will not resort to other methods of statutory construction. *Indus. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77 (App. 2009) (quoting *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529 (1994) and citing *Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343, 345 (App. 1995)). "Statutes that are…of the same subject or general purpose [] should be read together and harmonized when possible." *David C. v. Alexis S.*, 240 Ariz. 53, 55, ¶ 9 (2016) (citation omitted).

## I. The Court Erred by Terminating Father's Parental Rights Based on his Alleged Failure to Comply with § 8-106.01.

¶13 In Arizona, when a person claims to be the father of a child, the law requires that he file a notice of a claim of paternity before the birth of the child or within 30 days after the birth. A.R.S. § 8-106.01. Failure to file

---

[1] The court issued two final orders terminating Father's parental rights, on August 9 and August 24, 2022, respectively. Appellees point out that Father appealed only the August 9 order. Nevertheless, Arizona Rule of Procedure for the Juvenile Court 602(i)(10) incorporates Arizona Rule of Civil Appellate Procedure 9(c), which allows an appellant to file a notice of appeal before the final order issues. This Court therefore treats Father's notice of appeal as applicable to both final orders.

the notice results in a waiver of rights to be notified of any proceedings regarding adoption, unless by clear and convincing evidence it is proven that it was not possible to file the notice or he filed it as soon as possible after the 30-day timeframe expired. *Id.* Section 8-533 provides that "any person . . . that has a legitimate interest in the welfare of a child . . . may file a petition for the termination of a parent-child relationship" on several grounds, including: (6) That the putative father failed to file a notice of claim of paternity as prescribed in § 8-106.01. A.R.S. § 8-533(B)(5)-(6). The Arizona Supreme Court has defined a putative father as "a man who is or claims to be the father of the child and whose paternity has not been established." *David C.*, 240 Ariz. at 56-57, ¶ 17.

**¶14**          By statute, a mother is required to sign an affidavit listing all "potential fathers" that must be filed with the court in an adoption proceeding. A.R.S. § 8-106(F). A potential father is "a man, identified by the mother in an affidavit, who is or could be the father of the child, but whose paternity has not been established." *David C.*, 240 Ariz. at 56, ¶ 14. Notice must be served on any potential fathers stating in part that the potential father has a right to withhold consent to the adoption and it is his responsibility to initiate paternity proceedings. A.R.S. § 8-106.01(G).

**¶15**          As *David C.* suggests, a man may be both a putative and a potential father. 240 Ariz. at 58, ¶ 24. The common ground between the two definitions is that "paternity has not been established." But the rights and responsibilities for each are quite different. For instance, a putative father who fails to file with the registry waives all rights, and an adoption can proceed without providing him notice. A.R.S. § 8-106.01(H). A potential father, by contrast, is entitled to notice of an adoption action and an opportunity to initiate proceedings under Title 25. A.R.S. § 8-106(G). Reading these statutes together, once Mother identified Father as a "potential father" the question of whether he filed a notice of claim of paternity became moot and A.R.S. § 8-106.01(E) and A.R.S. § 8-533(B)(6) were no longer applicable.

**¶16**          This Court has stated that paternity proceedings take precedence in cases involving dependency. *In re G.R.*, 255 Ariz. 444, 448, ¶ 21 (App. 2023). The same is true for private termination petitions. But, when a putative father does not assert his rights or cannot be located, A.R.S. §§ 8-106.01(H) and 8-533(B)(6) provide a mechanism for a termination to be finalized. Those are not the facts in this case. Here, Father sought to assert his rights as a potential father. Because this Court reads statutes together and seeks to harmonize them, termination of Father's rights under A.R.S.

§ 8-533(B)(6) was improper because it conflicted with his rights as a potential father under A.R.S. § 8-106.

## II. Genetic Testing Established that Father is M.N.'s Legally Presumed Parent Under § 25-814(A)(2).

¶17 "A man is presumed to be the father of the child if . . . [g]enetic testing affirms at least a ninety-five per cent probability of paternity." A.R.S. § 25-814(A)(2). This presumption may only be rebutted by clear and convincing evidence. A.R.S. § 25-814(C).

¶18 Here, Father completed a court-ordered DNA test in November 2021. Though the test results were not filed with the family court until December 6, 2021, they confirmed the likelihood of his paternity of M.N. at 99.99%. Father did not contest the results; thus, he no longer met the definition of a putative father or potential father but was now the presumed father. *See* A.R.S. § 25-814(A)(2); A.R.S. § 25-401(4) (excluding from the definition of parent one whose paternity has not been established under § 25-814); Ariz. R.P. Juv. Ct. 102(v) (same); A.R.S. § 8-106(A)(2)(c) (court must obtain consent for adoption if father's "paternity is established under title 25, chapter 6, article 1"); *Albert L.*, 253 Ariz. at 150, ¶ 16 ("One may . . . 'establish' paternity under [A.R.S.] § 25-814."). Father's presumptive paternity could only be rebutted by clear and convincing evidence, A.R.S. § 25-814(C), and Choices never sought to do so.

¶19 Once the DNA test established Father as the "presumed father," he had the rights and responsibilities of a legal parent, not those of a putative father. *See* A.R.S. § 25-817 (requiring a court to issue a temporary order of support for a child following a genetic test affirming 95% probability of paternity during the pendency of a judicial determination of paternity); *see also* A.R.S. § 25-401(4) (legal parent means "a biological or adoptive parent whose parental rights have not been terminated. Legal parent includes a person whose paternity has been established pursuant to § 25-812 and 25-814."); Ariz. R.P. Juv. Ct. 102(v) ("'Parent' means the child's biological, adoptive, or legal mother or father whose rights have not been terminated. 'Parent' does not include a person whose paternity has not been established pursuant to A.R.S. § 25-812 or § 25-814.").

¶20 Because Father became M.N.'s "presumed father" upon the filing of the results of the DNA test, the superior court erred by terminating his rights under A.R.S. § 8-533(B)(6). Because Father prevails on this issue, this Court need not address Father's other arguments. *See Fragoso v. Fell*, 210 Ariz. 427, 430, ¶ 6 (App. 2005) ("Courts should decide cases on

nonconstitutional grounds if possible, avoiding resolution of constitutional issues, when other principles of law are controlling and the case can be decided without ruling on the constitutional questions.").

## CONCLUSION

**¶21** For the foregoing reasons, this Court reverses the superior court's order terminating Father's parental rights and remands for proceedings consistent with this opinion.



AMY M. WOOD • Clerk of the Court
FILED: AA